570 A.2d 112

Nan S. SMOLOW, Individually and on behalf of all other persons similarly situated, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Office of the Secretary of the Commonwealth of Pennsylvania, Department of State and Commonwealth of Pennsylvania, Department of Revenue, Board of Appeals and Commonwealth of Pennsylvania, Treasury Department, Board of Finance and Revenue, Respondents.

Commonwealth Court of Pennsylvania.

Argued May 24, 1989.

Decided Feb. 5, 1990.

Ronald Jay Smolow, with him, Michael H. Landis, Trevose, for petitioner.

Ernest D. Preate, Jr., Atty. Gen., with him, Bryan E. Barbin, and Bartholemew J. DeLuca, Deputy Attys. Gen., for respondents.

Before DOYLE, J.

DOYLE, Judge.

Before us is a motion for class certification filed by Nan S. Smolow (Petitioner) in her own behalf and on behalf of all other persons similarly situated who have, it is alleged, overpaid Pennsylvania sales tax on the purchase of new motor vehicles where the manufacturers gave a cash rebate taken by the purchaser at the time of the sale. The motion is presented as an ancillary proceeding in an appeal from the Board of Finance and Revenue under Section 763 of the Judicial Code, 42 Pa.C.S. § 763, and Pa.R.A.P. 1571.

Petitioner commenced this suit on March 4, 1988, by mailing a Petition for Refund to the Department of Revenue, Board of Appeals, requesting a refund of $60.00 after purchasing a new 1987 Mercury station wagon from Reedman Automobiles, Inc. on September 10, 1987.[1] The pur-

---

1. Petitioner also a filed a Class Action Complaint in Equity with this Court within our original jurisdiction on March 8, 1988, docketed at 603 C.D.1988. This action was dismissed based on the Commonwealth's Preliminary Objection that a court in equity lacked jurisdiction because Petitioner failed to raise a substantial question of constitutionality and because there was a complete and adequate remedy at law. *Smolow v. Department of Revenue,* 119 Pa.Commonwealth Ct.

chase price of the vehicle, after a trade-in allowance of $7,745.00 for her old automobile, was $9,511.00. In addition, the manufacturer offered a cash rebate of $1,000.00 [2] which the purchaser could elect to have credited to the sale immediately or be sent at a subsequent time by a check from the manufacturer. Petitioner in this instance elected the first option and therefore paid, not $9,511.00, but $8,511.00 for the station wagon. Reedman Automobiles, however, following instructions from the Department of Revenue (Department) collected a sales tax of six percent on the full $9,511.00, *i.e.,* on the sales price without the rebate. Petitioner's claim for refund alleged that she paid a sales tax of $570.66 (in effect a rate of 6.7%) rather than $510.66, and claimed a refund for the $60.00 difference. On her claim form filed with the Board of Appeals Petitioner also sought a refund "for all other similarly situated persons," as well as for herself.

The Board of Appeals granted Petitioner's refund claim, but denied her request for class certification. The Department's check of $60.18 (refund plus $.18 interest) was sent to Petitioner on June 1, 1988 but was returned by Petitioner's attorney on June 10, 1988 with the advice in a covering letter that his client "cannot accept your check unless and until all of the relief requested in the class action law suit is granted." An appeal to the Board of Finance and Revenue (Board) had an identical result, that is, the Board granted Petitioner's claim for a refund, (plus $.18 interest) on October 28, 1988, but a Commonwealth check mailed to Petitioner was returned to the Department on November 29, 1989. Hence, the appeal to this Court.

*Appeals* from determinations of the Board of Finance and Revenue are governed by Pa. R.A.P. 1571, and, although there is no specific provision for a "Class Action Petition for

324, 547 A.2d 478 (1988), *aff'd per curiam,* 521 Pa. 534, 557 A.2d 1063 (1989).

2. A cash rebate is in actuality a discount offered by an automobile manufacturer to promote the sale of its motor vehicle. Such rebates from the major automobile manufacturers were, and still are, a common sales promotion experience nationwide.

Review," in view of the holding of our Supreme Court in *McConnell v. Department of Revenue,* 503 Pa. 322, 469 A.2d 574 (1983) (*McConnell II*), we will proceed to address Petitioner's motion for class certification.

Pursuant to R.A.P. 1571(f), the parties have agreed upon the following stipulated findings of fact,[3] which we hereby adopt:

"1.  Petitioner is Nan S. Smolow, an individual with a mailing address of 79 Eagle Mount Drive, Richboro, Pennsylvania.  Petitioner seeks to represent a class of all persons who from March 9, 1985 to the present purchased new motor vehicles in the Commonwealth of Pennsylvania subject to sales tax, who were credited with or received a factory or manufacturer's cash rebate (hereinafter referred to as "rebate") prior to or at the time of sale, and where the Commonwealth collected sales tax on the purchase price without deducting the amount of the rebate.

"2.  On September 10, 1987, petitioner purchased a new 1987 Mercury station wagon from Reedman Automobiles, Inc. ("Reedman") in Langhorne, Bucks County, Pennsylvania.

"3.  On September 10, 1987, petitioner received a $1,000.00 manufacturer's cash rebate in connection with the purchase of this vehicle.  Manufacturers' rebates are offered by the vehicle manufacturer to the purchaser and the purchaser may apply this rebate to the downpayment for the car or receive cash from the manufacturer subsequent to the sale.

"4.  On September 10, 1987, petitioner applied the rebate at the time of sale to her down payment to reduce the purchase price.

"5.  Pursuant to Article II, Tax for Education, of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, Art. II,

---

3. "Partial Stipulation of Facts," dated May 23, 1989. A few non-essential findings have been omitted from this opinion. Principally, these are the reproduction of exhibits "a" through "cc" as well as the parties' reservation of the right to challenge for relevance and materiality. There were fifty-seven stipulated facts in all.

§ 201 et seq., *as amended,* 72 P.S. Sections 7201 et seq., the Commonwealth of Pennsylvania is authorized to impose and has imposed a 6% sales tax on the sale at retail of tangible personal property including the sale of new motor vehicles.

"6. At the time of purchase of petitioner's new motor vehicle on September 10, 1987, respondents maintained the policy and practice of collecting sales tax on the purchase price of new motor vehicles subject to sales tax including all manufacturer's rebates, whether or not they were received or credited prior to the time of sale, at the time of sale, or after the time of sale.

"7. At the time of petitioner's purchase, the Commonwealth interpreted 72 P.S. § 7201(g)(1) and 61 Pa.Code Section 33.2(d)(2) to require all manufacturers' rebates to be included in the purchase price to be used in calculating sales tax due on the sale of a new motor vehicle.

"8. At the time of petitioner's purchase of her new motor vehicle from Reedman, respondents directed new motor vehicle dealers to calculate the 6% sales tax by including manufacturers' rebates in the purchase price of the new motor vehicle whether or not they were received or credited prior to the time of sale, at the time of sale, or after the time of sale.

"9. Pursuant to respondents' interpretation, policy and practice, Reedman calculated sales tax on petitioner's purchase of a motor vehicle without reduction for the manufacturer's rebate received prior to or at the time of sale as follows:

| | |
|---|---|
| Floor price | $17,256.00 |
| Trade Allowance | −7,745.00 |
| Purchase price | $ 9,511.00 |
| State Sales Tax (6%) | × .06 |
| Pennsylvania Sales Tax Collected from Petitioner | $ 570.66 |

"10. Reedman paid the sales tax of $570.66 collected from petitioner to the Pennsylvania Department of Revenue.

"11. If the purchase price of petitioner's motor vehicle had been reduced by the $1,000.00 manufacturer's rebate, petitioner would have paid $60.00 less in state sales tax as follows:

| | |
|---|---|
| Floor Price | $17,256.00 |
| Trade Allowance | −7,745.00 |
| Manufacturer's Rebate at time of sale | −1,000.00 |
| Purchase Price | $ 8,511.00 |
| State Sales Tax (6%) | × .06 |
| Pennsylvania Sales Tax | 510.66 |

"12. Sales tax on the purchase price of a new motor vehicle must be paid at the time the vehicle is registered and a title certificate issued. If sales tax is not paid, no registration or title certificate will be issued.

"13. On March 4, 1988, petitioner sent a Petition for Refund by federal express mail to the Board of Appeals. A copy of the cover letter and Petition For Refund is attached hereto as Exhibit 'A'. On March 9, 1988, the Board of Appeals received and docketed petitioner's petition For Refund filed pursuant to 72 P.S. Sections 7252 and 7253 in which the petitioner requested a refund in the amount of $60.00. Additionally, petitioner requested a refund of 6% sales tax paid on manufacturers' rebates received or credited prior to or at the time of sale for a class of all other persons similarly situated.

"14. By mailing date of April 29, 1988, the Board of Appeals ordered that the petitioner be granted a credit or refund in the amount of $60.00 and refused petitioner's request for class relief. A copy of the Board of Appeal's decision and order is attached hereto as Exhibit 'B'. As a result of the Board of Appeals' [sic] order, a check in the

amount of $60.18 was issued June 1, 1988, composed of $60.00 refund and $.18 interest. A copy of the Affidavit of Joseph Breen which explains the calculation of interest is attached hereto as Exhibit 'C'.

"15. On June 10, 1988, counsel for petitioner returned the check to the Department of Revenue uncashed. A copy of the cover letter returning the check is attached hereto as Exhibit 'D'.

"16. On June 17, 1988, petitioner timely filed a Petition for Review with the Board of Finance and Revenue. A true and correct copy of this Petition for Review is attached hereto as Exhibit 'E'.

"17. By order mailed October 28, 1988, the Board of Finance and Revenue entered an order refusing the relief requested by the petitioner's Petition for Review. A true and correct copy of the Board's order is attached hereto as Exhibit 'F'.

"18. On November 17, 1988, the Department of Revenue sent a check to petitioner in the amount of $60.18 relating to the petitioner's individual claim for refund of sales tax collected on the manufacturer's rebate received at or prior to the time of sale. On November 29, 1988, counsel returned petitioner's refund check uncashed resulting from the decision of the Board of Finance and Revenue. A copy of the cover letter returning the check is attached hereto as Exhibit 'G'.

"19. On November 14, 1988, petitioner sought review of the Board of Finance and Revenue's order in this Honorable Court. A true and correct copy of petitioner's Class Petition For Review is attached hereto as Exhibit 'H'.

"20. On January 28, 1989, the Court ordered the matter to be assigned to the Honorable Joseph T. Doyle.

"21. Petitioner seeks to represent a class of all persons who from March 9, 1985 to the present purchased a new

motor vehicle in the Commonwealth of Pennsylvania subject to sales tax, who were credited with or received manufacturers' rebates prior to or at the time of sale, and the Department collected sales tax on the purchase price without deducting the amount of the rebate.

"22. From March 9, 1985 to April 28, 1988, respondents maintained the policy and practice of requiring manufacturers' rebates to be included in the purchase price of a new motor vehicle regardless of whether or not they were received prior to the time of sale, at the time of sale, or after the time of sale. A copy of the Affidavit of Gerard J. Sallavanti is attached hereto as Exhibit 'I'.

"23. In response to an inquiry dated April 15, 1988 from Steven J. Smith, CPA, Controller of the Pennsylvania Automotive Association, Karl M. Ross, Deputy Secretary for Fiscal Policy and Analysis of the Commonwealth of Pennsylvania, Department of Revenue sent a letter dated April 28, 1988 to Mr. Smith. A true and correct copy of this letter is attached hereto as Exhibit 'J'. This letter was sent by the Department of Revenue for the purpose of informing the Pennsylvania Automotive Association ('PAA') of the Department's change in policy and practice concerning the exclusion of manufacturers' rebates received in connection with the purchase of new motor vehicles subject to sales tax. The parties do not know if all new motor vehicle dealers received this letter.

"24. At a conference on April 11, 1988, counsel advised the Department that a press release should be issued to inform the public of the Department's change in policy and practice concerning the taxation of these rebates. On June 10, 1988, respondents issued a press release describing the proper method for calculating sales tax due on the purchase of new motor vehicles subject to manufacturers' rebates. A copy of the press release is attached hereto and marked Exhibit 'K'. A true and correct copy of the Memorandum of John Currie, Press Secretary, Department of Revenue

concerning this press release is attached hereto as Exhibit 'L'.

"25. The first press release relating to the Department's change in policy and practice was issued on June 10, 1988. Between April 28, 1988, and June 10, 1988, no press release was issued concerning the Department's change in policy and practice. The June 10, 1988, press release was not sent or delivered to any state legislator. This press release was not included with Pennsylvania personal income tax return packets. No news conference was called to discuss this press release.

"26. On June 24, 1988, John F. Currie, Press Secretary issued a memorandum concerning car rebates to Paul S. Roeder, Chief Counsel. This memorandum is attached hereto as Exhibit 'M'.

"27. Respondents have received numerous inquiries by letter and telephone concerning these rebates. Upon receiving such inquiries, respondents have prepared and forwarded the form letter and refund form attached hereto as Exhibit 'N'. Respondents do not have records of the number of inquiries, when and by whom these inquiries were made, or to whom the form letter and refund form were sent. These form letters and refund forms have not been distributed to the Department of Revenue's Philadelphia and Pittsburgh offices and these refund petitions are only accepted for filing in Harrisburg. All inquiries concerning these rebates are referred to the Department's Harrisburg office. If the inquirant contacts the Department's Harrisburg office, this form letter and refund petition is sent to the inquirant.

"28. In response to an inquiry dated May 18, 1988 by Stephen J. Pastorkovich of Peat, Marwick, Main & Co. concerning these rebates, on May 31, 1988, Paul S. Roeder, Chief Counsel, Department of Revenue, sent a letter to Mr. Pastorkovich concerning the Commonwealth's change in policy and practice regarding the taxability of manufactur-

ers' rebates on new motor vehicle purchases. A copy of that letter is attached hereto as Exhibit 'O'.

"29. In response to questions asked at a presentation before the Automotive Association of Erie County, on July 6, 1988, Karen L. Galli, Assistant Counsel, General Tax and Legal Division of the Commonwealth of Pennsylvania, Department of Revenue sent a letter to William C. Sennett, Esquire of the Automotive Association Of Erie County concerning the taxability of manufacturers' rebates on new motor vehicle purchases. A true and correct copy of that letter is attached hereto as Exhibit 'P'.

"30. On July 15, 1988, John F. Currie, Press Secretary sent a letter to the North Dakota State Tax Department concerning the Department of Revenue's policy and practice on collecting sales tax on rebates given at the time of sale. This letter is attached hereto as Exhibit 'Q'.

"31. On January 20, 1989, a second press release was issued that car buyers should apply for a tax refund if they overpaid sales tax on certain rebates and discounts offered by dealers and manufacturers. A copy of the press release is attached hereto and marked Exhibit 'R'. Between June 10, 1988 and January 20, 1989, no additional press release was issued concerning the Department's change in policy and practice. The January 20, 1989 press release was not sent or delivered to any state legislator. This press release was not included with Pennsylvania personal income tax return packets. No news conference was called to discuss this press release.

"32. On January 24, 1989, Paul S. Roeder, Jr., Chief Counsel for the Department of Revenue requested Commerce Clearing House to update its Pennsylvania Sales and Use Tax Reporter to incorporate the Department's change in policy concerning the taxability of manufacturers' rebates. A copy of Roeder's letter to Commerce Clearing House is attached hereto as Exhibit 'S'. Notice of this change in policy and practice was not given to Commerce Clearing House prior to January 24, 1989.

"33. At the request of the Department of Revenue, the Commerce Clearing House Pennsylvania Tax Reports and Pennsylvania Sales and Use Tax Reports were changed to set forth the Department's change in policy with respect to manufacturers' rebates and the calculation of sales tax on the purchase price on new motor vehicle purchases. A copy of the February 10, 1989 letter from Commerce Clearing House to the Chief Counsel for the Department of Revenue is attached hereto as Exhibit 'T'.

"34. From May 1, 1988 through April 30, 1989, respondents have received 9,846 refund petitions and processed 9,588 petitions. As of April 30, 1989, 258 petitions remained to be processed. Of the 9,588 processed refund petitions, the Board of Appeals has granted 9,351 refunds. A monthly breakdown of refund petitions received and closed by the Board of Appeals is attached hereto and marked Exhibit 'U'. An unknown number of these petitions are for refunds of sales tax on these rebates where the new vehicle was purchased after the Department's change in policy and practice on April 28, 1988. Since April 28, 1988 for some limited period of time and with respect to an unknown number of new motor vehicle sales, the Department has continued to receive and collect sales tax on manufacturers' rebates received or credited prior to or at the time of sale. The Department's computer docketing system does not contain information to determine if sales tax was collected on these rebates after April 18, 1988. The Department has maintained the hard copies of these refund petitions which show if sales tax was collected on these rebates after April 28, 1988. The parties do not know which or when new motor vehicle dealers stopped collecting sales tax on these rebates.

"35. As of January 3, 1989, $197,240.75 in refunds were issued or approved for 4428 refund petitions. A total of $7.64 in interest on these refunds has been issued or approved. A breakdown of sales tax refunds processed is attached hereto as Exhibit 'V'. The average rebate without interest is between $40.00 and $45.00.

"36.  In response to an inquiry concerning manufacturers' rebates, on March 19, 1985, the Commonwealth of Pennsylvania, Department of Revenue, Office of Chief Counsel, issued the letter attached hereto as Exhibit 'W'.

"37.  In response to a telephone call from the PAA concerning manufacturers' rebates, on April 3, 1985, the Commonwealth of Pennsylvania, Department of Revenue, Office of Chief Counsel, issued the letter attached hereto as Exhibit 'X'.

"38.  In response to a letter of February 20, 1985 from the PAA, on February 26, 1985, the Commonwealth of Pennsylvania, Department of Revenue, Office of Chief Counsel, issued the letter attached hereto as Exhibit 'Y'.

"39.  Prior to the initiation of this action, counsel for petitioner requested respondents to notify each individual who purchased a new motor vehicle and who paid sales tax on the purchase price including a manufacturer's rebate received or credited at the time of sale that they are entitled to a refund equal to 6% of the rebate plus interest and to issue refunds to these individuals.  Counsel for petitioner's letter of October 14, 1987 is attached hereto and marked Exhibit 'Z'.

"40.  In response to this letter from Ronald J. Smolow, Esquire on October 14, 1987, on November 4, 1987, the Commonwealth of Pennsylvania, Department of Revenue, Office of Chief Counsel, issued the letter attached hereto as Exhibit 'AA'.

"41.  Respondents have not given individual notice directly to taxpayers who paid sales tax on the purchase price of a new motor vehicle including a manufacturer's rebate received prior to or at the time of sale that:

"(a) They are entitled to a refund equal to 6% of the amount of the rebate, plus interest;

"(b) The Department of Revenue requires the taxpayer to file a petition to obtain this refund;

"(c) What information must be included in the petition;

"(d) What documents must be included with the petition;

"(e) Where and how to obtain this petition;

"(f) Where to submit this petition;

"(g) How long it will take to process this petition and issue a refund.

"42. Respondents have given notice of the information referred to in paragraph [41](a)-(f) to individuals inquiring about these rebates.

"43. Respondents have not given individual notice directly to each new motor vehicle dealer in the Commonwealth of Pennsylvania that sales tax on the purchase price of a new motor vehicle should be calculated after deducting manufacturers' or factory cash rebates received or credited prior to or at the time of sale.

"44. Respondents have not published notice as described in paragraph [41](a)-(g) in the Legal Notices section of any newspaper in the Commonwealth of Pennsylvania.

"45. Respondents have not published notice as described in paragraph [41](a)-(g) in the Pennsylvania Bulletin.

"46. Respondents have not requested or directed the Department of Motor Vehicles to include notice as described in paragraph [41](a)-(f) with each new motor vehicle registration or renewal of motor vehicle registration in the Commonwealth of Pennsylvania.

"47. (a) The press release referred to in paragraphs 24 and 31 were not published in the Legal Notices section of any newspaper in the Commonwealth of Pennsylvania or in the Pennsylvania Bulletin.

"(b) No similar notice was published in the Legal Notices section of any newspaper in the Commonwealth of Pennsylvania or in the Pennsylvania Bulletin.

"48. The Commonwealth maintains computerized records of, inter alia, the name and address of each individual registering a motor vehicle in the Commonwealth of Pennsylvania which records include name, address, date of purchase, purchase price and vehicle identification number.

"49. Each year, the Commonwealth sends registration renewal forms to each individual having a motor vehicle registered in the Commonwealth of Pennsylvania. These mailings have at times included notice relating to other matters such as the Pennsylvania Catastrophic Loss Fund (CAT Fund). Representative samples of such additional notices relating to the CAT Fund are attached hereto as Exhibit 'BB' and incorporated herein by reference.

"50. Respondents have not modified Form MV–1 to indicate that manufacturers' rebates received or credited prior to or at the time of sale should be deducted from the purchase price of a new motor vehicle before calculating sales tax.

"51. Respondents have not modified the instructions to Form MV–1 to indicate that manufacturers' or factory cash rebates received or credited prior to or at the time of sale should be deducted from the purchase price of a new motor vehicle before calculating sales tax.

"52. The Commonwealth has agreed not to purge or destroy, or cause to be purged or destroyed all records that the Commonwealth possesses from March 9, 1984 to the present relating to the calculations and payment of sales tax for new motor vehicle sales made within the Commonwealth of Pennsylvania, including Form MV–1.

"53. The Polk report attached hereto as Exhibit 'CC' is genuine, authentic and accurately sets forth the number of new motor vehicle registrations in the Commonwealth of Pennsylvania for the time periods indicated.

"54. (a) Other than Tax Regulation 300 (61 Pa.Code Section 33.2) which was adopted in 1972, no rulings or regulations concerning whether or not manufacturers' or factory cash rebates received or credited prior to or at the time of sale should be deducted from the purchase price of a new motor vehicle before calculating sales tax have been approved for legality by the Department of Justice and filed in the Department of State.

"(b) No such rulings or regulation have been published in the Pennsylvania Bulletin.

"(c) No such rulings or regulations have been published in the Legal Notices section of any newspaper in the Commonwealth of Pennsylvania.

"55.   The parties agree that the putative class is between 400,000 and 1,000,000 members for the time period contested."

■   Before we may consider the merits of class certification under Pa.R.C.P. Nos. 1702, 1708 and 1709, one threshold issue demands our attention.   Petitioner as an individual was offered a full refund as to her particular claim but has refused to accept it.   Therefore, we must consider whether this fact has mooted the instant case as to Petitioner's individual claim.

We hold that it does not.   We will not allow the Department to defeat a class certification which would otherwise be valid by proffering an individual refund to the named representative of the purported class.   *Cf. Alessandro v. State Farm Mutual Automobile Insurance Co.*, 487 Pa. 274, 409 A.2d 347 (1979).

■   Next, we must consider whether a taxpayer who erroneously pays a tax either to a local agency or, in this case to the Commonwealth, and who has a cause of action in her own individual right for a refund, may bring a class action.   Petitioner asserts that such action may be brought, relying upon *McConnell II* and *Stevenson v. Department of Revenue*, 489 Pa. 1, 413 A.2d 667 (1980).   The Department maintains that in such a situation an individual may not bring a class action and relies upon *Lilian v. Commonwealth*, 467 Pa. 15, 354 A.2d 250 (1976), and *Aronson v. City of Pittsburgh*, 98 Pa.Commonwealth Ct. 1, 510 A.2d 871 (1986) (*Aronson II*).   In order to decide which, if any of these cases controls the instant situation, an examination of the underlying facts and procedural postures of each of them is necessary.

The *McConnell* cases originally began when the executors of the estate of John McConnell filed a "class petition for review" in this Court in our original jurisdiction, *McConnell v. Department of Revenue*, 52 Pa.Commonwealth Ct. 479, 415 A.2d 1012 (1980) (*McConnell I*), challenging the validity of a provision in the Department's regulations which pertained to a property tax or rent rebate for senior citizens which read as follows:

> A claim for a property tax rebate or rent rebate in lieu of property taxes may be filed by the personal representative of a decedent's estate if, and only if, the decedent were alive on or after January 1, of the year next succeeding the calendar year for which a rebate is claimed.

*Id.*, 52 Pa.Commonwealth Ct. at 480–81, 415 A.2d at 1013 (quoting 61 Pa.Code § 401.43(a)). McConnell's executors alleged that the provision was unreasonable because it denied a rebate to the estates of senior citizens who died during the year in which real estate taxes or rents were paid but allowed a rebate to those who survived until January 1 of the next tax year. Preliminary objections were filed to the petition which alleged, *inter alia*, that the estate and those it sought to represent via a class action had an adequate remedy at law and, therefore, could not maintain the class action. Judge Mencer, writing for an en banc panel of this Court, although addressing the issue submitted within our original jurisdiction, observed that there had been no question of constitutionality raised, and that there existed an adequate statutory remedy for determining the claims under Sections 11.1 through 11.3 of the Senior Citizens Rebate and Assistance Act, Act of March 11, 1971, P.L. 104, *as amended*, 72 P.S. §§ 4751–11.1–11.3.[4] He further noted that the petitioners then presently had a claim pending before the Department of Revenue, "the very existence of which indicates that an administrative remedy has been made available to petitioners and to those mem-

4. Sections 11.1–11.3 were added by Section 3 of the Act of December 5, 1973, P.L. 384.

bers of the class who have chosen to pursue it." 52 Pa.Commonwealth Ct. at 482 n. 3, 415 A.2d at 1013 n. 3. Thus, we sustained the preliminary objections of the Department, holding that,

> the availability or nonavailability of a remedy to other members of the class has no bearing on the fact that petitioners themselves have an adequate remedy at law and thus do not have the independent basis for jurisdiction required by the Supreme Court's decision in [*Lilian* ], which stated: 'With no independent basis for equity jurisdiction [petitioners] cannot generate it simply by alleging class status.' *Id.*, 52 Pa.Commonwealth Ct. at 483, 415 A.2d at 1014.

Subsequently, in conjunction with the second action via the administrative remedy, an appeal was taken from the Board of Finance and Revenue, and the executors filed a motion for a "determination of suit as a class action" with this Court. The motion was filed because a request to the Board that it certify the class went unresolved when the Board determined it had no jurisdiction to decide the question. In a memorandum opinion, this Court determined that we could not, in our appellate jurisdiction, entertain such a motion and further determined that the Board's refusal to entertain the class action motion was not erroneous because it, likewise, had no statutory authority to entertain such a motion. Our determination that we could not entertain a request to certify a class action in our appellate jurisdiction was appealed to the Supreme Court and in *McConnell II* the Supreme Court held that this Court *did* have the power, acting in its appellate capacity, to entertain such a petition. The case was thus remanded to us for further proceedings whereupon we ultimately certified the class.

A careful analysis of the *McConnell* cases will reveal therefore that, even though class action certification is a procedural device, *Lilian,* the underlying substantive cause of action must be examined when considering whether there is authority to employ the procedure. *Id.* Petitioner asserts that *McConnell II* is on point with her case but we must disagree and observe that what was ultimately sought in the *McConnell* cases was not a tax refund as in the case

presently before us, but a property tax or rent rebate *pursuant to an entitlement program.* Thus, the underlying cause of action in *McConnell II* (as well as *McConnell I*) was not a refund for a tax voluntarily paid and, in fact, the underlying cause of action did not involve taxes at all.

Petitioner also relies upon *Stevenson.* In *Stevenson* the named plaintiff and others brought separate actions before what is now the Board of Claims[5] and sought to have their claims heard as a class action on behalf of all first prize winners in the "Big Fifty Bonus Lottery." The Department moved to dismiss arguing that the Board of Claims had no authority to entertain a class action. The Supreme Court disagreed noting that the Board of Claims under its own enabling legislation had the authority to adopt regulations. The Board of Claims did so and adopted the Pennsylvania Rules of Civil Procedure, which the Supreme Court held, included Pa.R.C.P. Nos. 1701–1716 dealing with class certification. The Court thus determined that a class action could be maintained. Again, however, we must take into account that the underlying cause of action there concerned not a suit brought for a refund of taxes, but a suit upon a contract. Thus, *Stevenson* is not directly applicable in our situation either.

The Department relies first upon *Lilian.* In that case taxpayers, the Lilians, filed a complaint in equity in this Court seeking class action certification. Their goal was to compel the Secretary of Revenue to repay portions of a sales tax paid by the Lilians and others they sought to represent. Factually what occurred was that a federal excise tax applicable to certain newly manufactured vehicles was repealed by Congress and the repeal was made retroactive. Following the repeal the federal government refunded the excise tax to all persons who had purchased new vehicles during the window period in question. Individuals who had purchased vehicles during the relevant time period, however, had also paid a Pennsylvania sales tax of

5. Formerly, this agency was known as the Board of Arbitration of Claims.

six percent on the purchase price of their vehicles and that six percent was computed to include the applicable amount of the later repealed federal excise tax. The Department refused to account to the Lilians, and those they sought to represent, for the amounts of the Pennsylvania sales tax paid on the federal excise tax. The Lilians thus sought class action status to obtain refunds. As indicated, the suit was filed in our original jurisdiction.

The Supreme Court observed that had the Lilians sued to obtain a sales tax refund only on their own behalf a court in equity would have been without jurisdiction to grant recovery. This is because where an adequate administrative remedy exists a court in equity is without jurisdiction to entertain the action. The Court found that a remedy for the tax refund was provided in Sections 252 through 255 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7252–7255, and thus concluded that if the Lilians had no individual right to avail themselves of equitable jurisdiction, they could not acquire the right to such jurisdiction by the mere assertion of class status.

The Court observed:

The class action in Pennsylvania is a procedural device designed to promote efficiency and fairness in the handling of large numbers of similar claims; class status or the lack of it is irrelevant to the question of whether an action is to be heard in equity or at law or whether, indeed, either form is available in light of the statutory remedy. With no independent basis for equity jurisdiction appellants cannot generate it simply by alleging class status.

*Lilian,* 467 Pa. at 21, 354 A.2d at 253–54 (footnote omitted). Thus, a close reading of *Lilian* discloses that it does not address the precise issue before us as it held only that a class action remedy is not available in equity where an adequate statutory remedy exists. The instant case, however, was not brought in equity in our original jurisdiction, but as an ancillary matter in an appeal from the Board, and *procedurally,* that is permissible, *McConnell II.*

Finally, we move to the *Aronson* cases. Initially, in *Aronson v. City of Pittsburgh,* 86 Pa.Commonwealth Ct. 591, 485 A.2d 890 (1985) (*Aronson I*), our Court affirmed a common pleas court order which had vacated and set aside the assessment of a business privilege tax on fees Aronson had received as the director of various corporations. We affirmed on the basis that the "receipt of compensation for services as a corporate director does not constitute a business as defined in the business privilege tax ordinance." *Id.,* 86 Pa.Commonwealth Ct. at 600, 485 A.2d at 895. Prior to our affirmance, however, but after the litigation in *Aronson I* had begun, Aronson had filed a separate class action complaint in the common pleas court seeking to recover the taxes paid to the City for the year 1980 on director's fees. He had brought the suit on behalf of himself and others similarly situated. The common pleas court denied the motion for certification of a class and an appeal was taken to this Court (*Aronson II*). We observed in *Aronson II* that an adequate statutory remedy existed for any individual who desired to secure a refund. *See* Sections 1 and 2 of the Act of May 21, 1943, P.L. 349, *as amended,* (1943 Act), 72 P.S. §§ 5566b and 5566c. We further observed:

> [t]he right to sue the Commonwealth for the recovery of money or taxes alleged to have been erroneously paid to it exists only by the grace of the Legislature. Article I, Section 11 of the Constitution of Pennsylvania provides: '... Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.'

*Aronson II,* 98 Pa.Commonwealth Ct. at 5, 510 A.2d at 873 (quoting *Land Holding Corp. v. Board of Finance and Revenue,* 388 Pa. 61, 65, 130 A.2d 700, 703 (1957)). We also recognized that statutes authorizing refunds must be strictly construed. Reasoning that Sections 1 and 2 of the 1943 Act give only the *individual aggrieved* the right to sue for a refund, we held that that right may not be transferred to another by way of a class action.[6] This construction of

6. We observe that *Aronson II* was decided subsequent to *McConnell II.*

Sections 1 and 2 is in full accord with our Supreme Court's opinion in *Lilian.*

In summary, then, while this Court may entertain a petition for class certification, *McConnell II,* as may any administrative agency which has, within its authority, adopted regulations or rules of procedure to address the issue, *Stevenson,* there must, nevertheless, be a substantive cause of action possessed by the plaintiff which permits the *procedure* of a class certification to be used. Only if there is such a substantive cause of action may a class be certified. Thus, if there is no cause of action which may be litigated by the individual because the plaintiff chose the wrong forum, *McConnell I; Lilian,* or, because only an *individual* cause of action exists under our law, *Aronson II,* class certification will not be permitted.

Applying these principles to the case a bar, we note that *Aronson II,* unlike any of the other cases previously cited, concerns, as does this case, a refund for a tax erroneously paid. Accordingly, we hold that *Aronson II* rather than *McConnell II* controls here. Therefore, we must deny the motion for class certification, not because we are incapable of addressing the class certification issue, but because Petitioner and the putative class possess, as to the substantive cause of action, only individual rights, a limitation which may be remedied only by the legislature. *Aronson II.*

Based upon the foregoing discussion, Petitioner's motion for class certification [7] is hereby denied.[8]

---

**7.** Because of our disposition of this case we need not determine whether sovereign immunity bars the instant petition. We do again observe, however, that class action is a procedural matter, not a substantive one. *Lilian.* Further, we expressly do not decide the question of which procedural vehicle should be adopted or which forum is appropriate where a hearing on the substantive issue is within the jurisdiction of an administrative agency, but that agency has no procedural rules or regulations to address the procedural issue of class certification.

**8.** We note that this order, which denies class certification, is final and appealable. *McConnell II,* 503 Pa. at 325 n. 2, 469 A.2d at 576 n. 2. We are aware that pursuant to Pa.R.A.P. 1571(i) exceptions must be filed to orders of this Court pertaining to decisions of the Board of

## ORDER

NOW, February 5, 1990, Petitioner's motion for class certification in the above-captioned matter is hereby denied.

Finance and Revenue or all issues are waived on appeal to the Supreme Court. We, however, believe the rule on exceptions applies only to the merits of the case and not to collateral orders such as this one. We note that no exceptions were filed in *McConnell* and the Supreme Court did not quash the appeal.