609 A.2d 917

**MIRROR PRINTING COMPANY, INC.,** Appellant

v.

**ALTOONA AREA SCHOOL BOARD and Nelson Sell,** Appellees.

Commonwealth Court of Pennsylvania.

Argued April 7, 1992.

Decided May 21, 1992.

---

Stephen D. Wicks, Altoona, for appellant.

Carl P. Beard, Middletown, for appellees.

Randall C. Rodkey, Johnstown, for intervening appellee, Nelson Sell.

Before SMITH and KELLEY, JJ., and LEDERER, Senior Judge.

LEDERER, Senior Judge.

Mirror Printing Company, Inc. (Mirror), appeals from an order of the Court of Common Pleas of Blair County dismissing its complaint in equity with prejudice. We affirm.

On May 28, 1987, the Altoona Area School Board (Board) conducted a public hearing at which they initiated disciplinary proceedings pursuant to Section 1127 of the Public School

Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1127 (Public School Code),[1] against Nelson Sell (Sell), a teacher at Altoona High School. Sell requested that the proceeding be conducted in private, invoking his right under Section 1126 of the Public School Code,[2] after which the Board gave Sell written notice of the charges against him.

At the conclusion of the hearing on May 28, 1987, the Board met in executive session with its temporary solicitor, Jolene Grubb Kopriva, to discuss the disciplinary proceeding against Sell. The Board requested that Ms. Kopriva pursue negotiations with Sell's attorney in an attempt to resolve the matter without protracted litigation. At a second executive session held June 8, 1987, the Board was advised by Ms. Kopriva that Sell had agreed to accept a six month suspension. The Board then asked Ms. Kopriva to draft an agreement authorizing the suspension.

At an open meeting held June 15, 1987, the Board placed the resolution on the agenda, which was later voted on and adopted at the conclusion of the hearing. The agreement, which was signed by both the President and Secretary of the Board, obligated Sell to accept a period of suspension for six months and to pay certain legal costs incident to the disciplinary proceeding. In addition, the agreement obligated Sell to forego any further legal action on this matter.

During the meeting, and again at its conclusion, a representative from the Mirror, a local news publication, repeatedly asked the Board to reveal the basis of the suspension. When the Board refused to do so, the Mirror filed a complaint in equity alleging that the Board had violated the Sunshine Act [3]

**1.** Section 1127 of the Public School Code provides:
Before any professional employe having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. . . .

**2.** Section 1126 of the Public School Code, 24 P.S. § 11–1126, mandates that "[a]ll hearings . . . pertaining to the dismissal or the termination of contracts of professional employes, shall be public, unless otherwise requested by the party against whom the complaint is made."

**3.** Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

by negotiating the agreement with Sell in executive session and then failing to make public the contents of the agreement.

The trial court dismissed Mirror's complaint with prejudice, concluding that the Board had acted properly and legally, and that the Board was at no time in violation of the Sunshine Act or the Right-to-Know-Act.[4]

▪ Mirror now appeals that decision[5] to this Court.[6] Mirror contends that the Board went beyond the mere "discussions" arguably allowed in executive sessions and actually deliberated on and executed a contract without disclosing either the discussions that led to the agreement or the contents of the agreement itself, thus, violating Sections 4 and 8 of the Sunshine Act, 65 P.S. §§ 274 and 278.

The Board and Nelson Sell, appellees herein, contend that they complied with the requirements of the Sunshine Act by adopting the resolution effectuating Sell's suspension at the open meeting on June 15, 1987. Appellees argue that disclosure of the discussions held in executive session would nullify Section 8(a) of the Sunshine Act and violate Sell's privilege under Section 1126 of the Public School Code. Furthermore, appellees contend that disclosure of the agreement is not required as it is not a public record under the Right-to-Know-Act, since it is specifically excluded from that definition under Section (2) of that Act, 65 P.S. § 66.1(2). We agree.

4. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4, frequently referred to as Right-to-Know-Act.

5. After briefs were filed by all parties to this action, the trial court heard oral argument on the matter and, on July 19, 1989 entered an order, dismissing Mirror's complaint and decreeing that the Board did not violate the Sunshine Act and that the agreement was not required to be made public. On July 28, 1989, Mirror filed post-trial motions requesting that the trial court reverse its decision. On August 8, 1991, the trial court issued an order reaffirming, in its entirety, its July 19, 1989 opinion and order.

6. Our scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *Penn–Delco School District v. Schukraft,* 95 Pa.Commonwealth Ct. 619, 506 A.2d 956 (1986), *petition for allowance of appeal denied,* 514 Pa. 644, 523 A.2d 1133 (1987).

When enacting the Sunshine Act, the General Assembly declared it to be the public policy of the Commonwealth "to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in this act." Section 2 of the Sunshine Act, 65 P.S. § 272(b). Section 4 of the Sunshine Act embodies this stated purpose by requiring that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section ... 8 ..." 65 P.S. § 274. Section 8(a)(1), (5), in turn, gives an agency permission to hold an "executive session" for any of several enumerated reasons, including:

> To discuss any matter involving the employment ... or disciplining of any ... employee, provided, however, that the individual employees ... whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting....
>
> \* \* \* \* \* \*
>
> To review and discuss agency business which, if conducted in public, would violate a lawful privilege or lead to disclosure of information or confidentiality protected by law....

65 P.S. § 278(a)(1) and (5).

Mirror does not argue that the Board was not authorized under the Sunshine Act to conduct executive sessions to discuss the disciplinary action concerning Sell; instead, it argues that a violation occurred when the Board executed the contract in private without presenting its decision at the open meeting and then voting on whether or not to approve the contract by executing it.

Before discussing the merits of Mirror's contention we note that, in this case, there was no question that the Board complied with the due process requirements of both the Sunshine Act and the Public School Code in notifying Sell of both the specific charges against him and also of his right to have the disciplinary proceeding against him conducted at an open meeting. The parties stipulated that, after being properly notified, Sell invoked his privilege under Section 1126 of the

Public School Code to have the proceeding conducted in private. Accordingly, the only issue which concerns us then is whether or not a violation of the Sunshine Act occurs when the Board refuses to disclose the basis of an agreement negotiated in properly held executive session concerning the disciplinary action against an employee who has been afforded due process but has chosen to seek the confidentiality of a private hearing.

While the Sunshine Act does allow agencies to hold closed meetings under limited circumstances, Section 8(c) of that Act mandates that "official action" taken on discussions held pursuant to subsection (a) be taken at an open meeting. Official action, as defined in Section 3 of the Sunshine Act,[7] includes "[t]he decisions on agency business made by an agency," as well as "the vote taken by any agency on any . . . resolution. . . ." Agency business, as defined in that same section, includes ". . . the creation of liability by contract . . ."

In *Keenheel v. Pennsylvania Securities Commission,* 134 Pa.Commonwealth Ct. 494, 579 A.2d 1358 (1990), this Court found that, although the Commission properly went into executive session to discuss settlement of a former employee's claims concerning his employment, it violated Section 4 of the Sunshine Act when it failed to return to the open meeting to vote on whether or not to enter into the agreement. The agreement was not invalidated however, because there was no claim of injury by the former employee by virtue of the violation and justice would not have been served by doing so. *Id.,* 134 Pa.Commonwealth Ct. at 500–501, 579 A.2d at 1361.

Here, unlike *Keenheel,* the Board voted on and passed a motion to suspend Nelson Sell at its open meeting on June 15, 1987. Specifically, the resolution voted on in the open meeting stated:

> [t]he Personnel Committee recommends that Nelson Sell, Social Studies teacher at the Altoona Area High School, be suspended without pay for six (6) months commencing the beginning of the 1987–1988 school year through the end of

7. 65 P.S. § 273.

February, 1988. In addition, Mr. Sell will pay the costs of the Disciplinary Hearing which resulted in the suspension. Minutes of June 15, 1987 meeting, Item j and page 122–HH.

Although this Court acknowledges the strong public policy in favor of the public's right to know of, be present at, and participate in the discussions and decisions of any public agency that is embodied in the Sunshine Act, as well as their right to have access to at all reasonable times the public records of any agency under the Right-to-Know-Act, the public's right is not without restrictions. As the trial court correctly noted, while executive sessions are not to be used to circumvent the public's right to know, this right must be balanced, under certain situations, with the individual's right to seek confidentiality concerning a disciplinary matter. In that regard, the Sunshine Act authorizes closed executive sessions when, due to the sensitive nature of the proceeding, confidentiality is required. Similarly, under the Right-to-Know-Act, the legislature has excluded from the definition of a public record those documents which may be harmful to a person's reputation or personal security.

We conclude, therefore, as did the trial court, that the Board properly conducted the executive sessions to discuss settlement of a disciplinary matter and that Sell was afforded due process in this regard and chose to invoke his privilege under the Public School Code to have the proceedings conducted in private. We also find that neither the discussions held in executive session nor the basis of the suspension need be disclosed under the Sunshine Act or the Right-to-Know-Act.

Accordingly, having determined that the trial court did not commit an error of law or abuse its discretion, we affirm its decision dismissing Mirror's complaint with prejudice.

## ORDER

AND NOW, this 21st day of May, 1992, the decision of the Court of Common Pleas of Blair County in the above-captioned matter is hereby affirmed.