639 A.2d 957

**Kim VERRICHIA and Nan Smolow**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE and Barton Fields, Secretary of the Department of Revenue, and James Scheiner, Secretary of the Department of Revenue and Karl Ross, Department of the Revenue Deputy Secretary for Fiscal Policy and Analysis, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Jan. 31, 1994.

Decided March 24, 1994.

Reargument Denied May 12, 1994.

R. Douglas Sherman, Deputy Atty. Gen., for appellants.

Jeffrey Cooper, for appellees.

Before DOYLE, and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Commonwealth of Pennsylvania, Department of Revenue (Department), Barton Fields, a former Secretary of the Department, James Scheiner, a former Secretary of the Department and Karl Ross, former Deputy Secretary for Fiscal Policy Analysis for the Department (collectively, Commonwealth), appeal from the orders of the Court of Common Pleas of Bucks County that granted Nan Smolow, Kim Verrichia and class representative taxpayers' (collectively, Taxpayers) motion for voluntary discontinuance of the class action filed by Taxpayers and Taxpayers their attorneys' fees, costs and expenses. We reverse.

## FACTS

On May 16, 1988, Taxpayers filed a civil rights action, pursuant to 42 U.S.C. § 1983,[1] challenging a Department

---

1. Section 1983 provides in pertinent part:

policy regarding sales tax on automobile rebates received by a consumer when purchasing a new motor vehicle.[2] However, three weeks before the filing of this class action suit, on April 28, 1988, then Deputy Secretary Ross issued a letter to the Pennsylvania Automotive Association (PAA) as a result of PAA's request for clarification of the Department's auto rebate taxation policy. The need for clarification resulted from differing types of rebates.[3] A problem existed with using the term "rebate" to include both purchase discounts and true rebates, i.e. cash refunds. The Department determined that since purchasers were assigning their rebates to the dealer in increasing numbers with the practical effect of lowering the price they paid for the vehicle, the rebate amount could be subtracted from the purchase price, thus lowering the amount of Pennsylvania sales tax for the transaction, provided that the rebate was assigned at the time of sale. This revision did not affect the amount of sales tax due on the purchase of a new vehicle where the manufacturer mailed rebates to the purchaser following the sale. Similarly, this revision did not change the amount of sales tax due for a vehicle transaction involving dealer discounts or rebates.

Moreover, the revision did not change the fact that, in reality, a manufacturer's rebate cannot be given before or at the time of sale. Rather, it still can only be issued after the sale. It is the pre-April 28, 1988 policy of the Department that Taxpayers' complaint challenges.[4]

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State, ..., subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

2. Taxpayers had written the Department in 1987, stating that the Department's policy was improper.

3. For example, some rebates are applied up-front to the purchase price to effect a purchase discount. When the rebate is used as a cash bonus, it is not taxable. On the other hand, when the rebate money is given to the purchaser after the sale, it affects neither the purchase price nor the amount of sales tax.

4. Following the April 28, 1988 clarification letter and subsequent press release, the Department's Board of Appeals (Board) began receiving

Taxpayers' complaint asserts that Sections 201(g)(1) and (2) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7201(g)(1) and (2), and the Pennsylvania Department of Revenue Regulation at 61 Pa.Code § 33.2 (Regulation 300), provide that discounts such as on-the-spot cash discounts, wholesaler's discounts and trade discounts—the type of transaction that was affected by the Department's April 28, 1988 revision—which effectively establish a new sales price and which do not occur after the sale, should be deducted in computing the purchase price when determining the amount of sales tax. Taxpayers' complaint further asserts that pursuant to Section 202(a) of the Tax Code, 72 P.S. § 7202(a), Pennsylvania's six percent sales tax was erroneously calculated on the full purchase price of all new motor vehicles, before deducting the discounts. Taxpayers assert that contrary to the Tax Code and Regulation 300 the Commonwealth, acting under color of state law, maintained the custom, policy and practice of collecting a six percent sales tax on the discounted portion of the purchase price of a new motor vehicle. Taxpayers contend this action was "arbitrary, capricious, confiscatory, discriminatory, unreasonable and wholly without justification or authority, thereby depriving [Taxpayers] of their property without due process and in violation of the Fifth and Fourteenth Amendments to the United States Constitution...." (8a–9a).

Taxpayers' complaint also contends that a class action is the proper manner to proceed in this cause of action because: (1) the class is so numerous that joinder of all members would be impractical; (2) common questions of law and fact exist as to each member of the class; (3) representative Taxpayers' claims are typical of the claims of all other class members; (4) the class is manageable; (5) individual suits by individual class members would result in varying and inconsistent adjudications; and (6) the expense of litigation favors a single class action instead of individual or separate actions.

petitions for refunds of sales tax paid on rebates received at or before the time of the sale although the Commonwealth did continue to receive some sales tax on rebates until July 1988, after the lawsuit was filed.

Shortly after this lawsuit was filed, the Commonwealth requested that the action be stayed pending the disposition of other actions filed by Verrichia and Smolow.[5] Despite this stay, the Commonwealth began issuing refunds of improperly collected sales tax beginning in July 1988 through October 1989. On April 20, 1990, the stay of this action was vacated because of the final disposition in *Smolow I* and *Smolow II.* The Commonwealth filed preliminary objections which the trial court denied without opinion on November 12, 1990. The Commonwealth, after answering the complaint, then moved for judgment on the pleadings, on the basis that an action brought pursuant to 42 U.S.C. § 1983 against state officials which seeks payment of monies from the state treasury is barred by *Will v. Michigan,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). On April 1, 1991, the trial court denied the motion for judgment on the pleadings, again without opinion.

On June 17, 1991, the trial court conducted a class certification hearing and entered an order certifying the class which, on September 26, 1991, was amended to include only the period from May 16, 1986 forward. The class certification

**5.** In *Smolow v. Commonwealth,* 119 Pa.Commonwealth Ct. 324, 547 A.2d 478 (1988), *aff'd per curiam,* 521 Pa. 534, 557 A.2d 1063 (1989) (*Smolow I*), Smolow filed a petition for review and for class certification in our original jurisdiction. The petition sought refunds, injunctive relief and/or a writ of mandamus restraining the Department and treble damages under the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201–1 to 201–9.2. We held that Smolow had failed to exhaust her administrative remedies and thus, because the action was not maintainable in our original jurisdiction, it could not proceed as a class action. The Supreme Court affirmed, *per curiam.*

*Smolow v. Commonwealth,* 131 Pa.Commonwealth Ct. 276, 570 A.2d 112 (1990) *aff'd per curiam,* 527 Pa. 371, 592 A.2d 40 (1991) (*Smolow II*), concerned a class action Smolow filed with the Board to collect the overpaid sales tax. The Board granted Smolow's individual claim, but denied the request for class certification. The Board of Finance and Revenue reached the identical result. Smolow appealed to this Court. We also denied class certification, holding the right to sue for refund of taxes erroneously paid was a personal right of the individual grieved which could not be maintained as a class action. We specifically held that there must be a substantive cause of action which permits the procedure of a class action to be used. "Only if there is such a cause of action may a class be certified." *Id.* at 296, 570 A.2d at 122. The Supreme Court affirmed, *per curiam.*

order also provided for notice to almost two million members of the class as defined.[6] Enclosed in all motor vehicles owners license renewal packets was the notice stipulated to by the parties which provided:

NOTICE OF CLASS ACTION CERTIFICATION

A class action lawsuit was filed on May 16, 1988 in the Court of Common Pleas of Bucks County (*Verrichia, et al. v. Commonwealth, et al.,* No. 88-3983-17-5) alleging that the Pennsylvania Department of Revenue and its officials wrongfully collected sales tax on the purchase price of new motor vehicles before deducting the amount of manufacturers' rebates or discounts received at the time of sale. Plaintiffs allege that this violated their constitutional rights and the rights of all other persons who were similarly affected.

Plaintiffs seek damages for all persons in the class for the excess amount of sales tax paid, i.e. 6% of the rebate or discount plus interest.

Sales tax on new motor vehicles is now collected based on the purchase price after deduction of rebates or discounts received at or before the sale. *Refunds will be issued to persons who submit a signed written request with proof of overpayment pursuant to the law.*

The Class. On June 17, 1991 the court certified the following class:

All persons who purchased a new motor vehicle subject to the Pennsylvania sales tax on or after May 16, 1986 who received or who were credited with a manufacturer's discount or rebate at or before the time of sale, where Pennsyl-

---

6. Taxpayers assert that the Commonwealth is barred in the instant case from challenging the class certification because it did not appeal from the order defining the class and approving the class notice. This assertion is meritless. An order denying class certification is a final appealable order, *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975), but an order granting a class certification is not a final appealable order because the order neither disposes of the entire case nor puts the appellant out of court because of the claim. *See, e.g., Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978). Thus, the Commonwealth could not have appealed from this order.

vania collected a sales tax calculated on the purchase price before deducting such rebate or discount.

*Decision Binding on the Class.* If you are a member of this class, you will be bound by the court's determination in this case unless you file a written notice with the Prothonotary of Bucks County, Bucks County Court House, Doylestown, PA. 18901 no later than March 31, 1993 that you want to be excluded from the class.

*Claims for Tax Refunds.* You may identify yourself as a member of this class and you may apply for a tax refund by submitting a claim to the Department of Revenue with the following: (a) name and address of purchaser; (b) a copy of the original invoice showing the purchase priced and the amount of the rebate; (c) proof of payment of sales tax; and (d) this claim card signed by yourself and including your social security number. Send the claim to the PA Department of Revenue, Board of Appeals, Department 281021, Strawberry Square, Harrisburg, PA. 17128.

Only those persons submitting the required information will be eligible for a refund. No refunds will be ·issued until final disposition of the action and order of the court.

*Claim Submission Deadline.* Claims must be postmarked no later than March 31, 1993.

(Emphasis added).

On March 7, 1992, Taxpayers filed a motion for voluntary discontinuance pursuant to Pa.R.C.P. No. 1714, contending that the class notice to which the Commonwealth stipulated effectively resolved all issues of liability based upon the language in the notice that, "Refunds will be issued to persons who submit a signed written request with proof of overpayment pursuant to the law." Taxpayers also petitioned for attorneys' fees, costs and expenses under Pa.R.C.P. No. 1716.

The trial court heard conflicting testimony from the parties concerning whether or not the Commonwealth had admitted liability by stipulating to the language of the Notice of Class Certification. The trial court held that the Commonwealth had conceded liability in stipulating to the Notice. The trial

court further found that only after the filing of Taxpayers' cause of action and as a result of the efforts of representative Taxpayers did the Commonwealth stop taxing manufacturer's rebates and agree to pay the cash refunds to class members who submitted proof of overpayment. The trial court established a common fund for refunds totaling approximately $31.5 million.

The trial court also determined that as prevailing parties, Taxpayers were entitled to attorneys' fees in the amount of $701,880 plus costs of $70,088.07 from the common fund "generated by the efforts of their counsel" or, alternatively, pursuant to 42 U.S.C. § 1988. The Commonwealth now appeals.[7]

The Commonwealth argues that the trial court erred as a matter of law in: 1) allowing Taxpayers to maintain this action because Taxpayers failed to exhaust administrative remedies; 2) failing to apply the doctrine of *Will v. Michigan;* 3) certifying this action as a class action; and 4) awarding attorneys' fees and costs to Taxpayers' counsel.

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Commonwealth cites considerable case law to support its proposition that no claim can be maintained for deprivation of property without due process, i.e., a § 1983 action, if a plain and adequate administrative remedy exists to recover the property. The Commonwealth asserts that because the individual taxpayers had opportunity to recover the overpayment of the sales tax as individuals, as did Smolow, Verrichia and over 12,000 others, with rights of appeal,[8] that a plain and adequate remedy for relief exists through the ad-

7. Our scope of review is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Mirror Printing Co. v. Altoona Area School Board,* 148 Pa.Commonwealth Ct. 168, 609 A.2d 917 (1992).

8. See discussion of *Smolow II* at n. 1.

ministrative process and the judiciary.[9] The Commonwealth now argues that having had the opportunity to seek recovery of the tax, Taxpayers may not maintain the § 1983 action, and, therefore, the trial court erred in failing to grant the Commonwealth's preliminary objections and motion for judgment on the pleadings and in eventually certifying the class.

While in *Smolow I*, this Court, affirmed by the Supreme Court, required the exhaustion of administrative remedies, the Supreme Court in *Murtagh v. County of Berks*, 535 Pa. 50, 634 A.2d 179 (1993), did not require the taxpayer to exhaust administrative remedies before filing a § 1983 action. *Smolow I* and *Murtagh* appear conflicting, but upon careful analysis *Smolow I* and *Murtagh* can be reconciled.

In *Murtagh*, the taxpayers, representing a class of recent purchasers of real estate who had not exhausted their administrative remedies, filed an amended complaint against various local governments. The taxpayers asserted that the local governments had adopted a discriminatory "Welcome Stranger" policy in reassessing only the newly acquired real estate, thus violating their equal protection rights under the Fourteenth Amendment. The taxpayers also asserted that because the reassessments were done under color of state law, the local government violated 42 U.S.C. § 1983. The trial court held it had jurisdiction but we reversed, holding that the taxpayers failed to exhaust their administrative remedies, and thus, the trial court did not have jurisdiction. The Supreme Court reversed and remanded, holding that the taxpayers

---

**9.** The Tax Code permits a taxpayer to petition the Board within three years of the payment of the tax. Section 253(a) of the Tax Code, 72 P.S. § 7253(a). An unsatisfied taxpayer may then appeal to the Board of Finance and Revenue. Section 254 of the Tax Code, 72 P.S. § 7254. Thereafter, an aggrieved individual has the right of *de novo* review to this Court, Section 255 of the Tax Code, 72 P.S. § 7255, with an appeal as of right to the Pennsylvania Supreme Court. Pa.R.A.P. 1101(a)(2). This is the procedure Taxpayers followed in *Smolow II*. Smolow was granted a refund claim, but denied the request for class certification. On *de novo* review to this Court, we held that while the Commonwealth could not defeat a class certification by proffering an individual refund to Smolow, the right to sue for refund of taxes erroneously paid was a personal right of the individual aggrieved and could not be maintained as a class action. The Supreme Court affirmed.

were not required to exhaust their administrative remedies before instituting their § 1983 action because the "Welcome Stranger" policy was *de facto* discriminatory. However, the Tax Code and Regulation 300, applicable here, and also at issue in *Smolow I* and *Smolow II*, were *not de facto* discriminatory because the law applied uniformly to all purchasers of automobiles that received rebates.[10] Thus, *Murtagh* does not control, because the Tax Code and Regulation 300 at issue here are not *de facto* discriminatory. Therefore, we hold that Taxpayers had an adequate administrative remedy as stated in *Smolow I*, which precludes their filing of or maintaining a § 1983 cause of action.

## DOCTRINE OF WILL v. MICHIGAN

 Although we could end our discussion at this point, we feel obliged to discuss the Commonwealth's most persuasive argument, that the trial court erred in failing to apply the doctrine of *Will v. Michigan*. In *Will v. Michigan*, an employee filed a claim against the Michigan Department of State Police and the Michigan Director of State Police in his official capacity, alleging that both parties had denied the employee a promotion for an improper reason in violation of 42 U.S.C. § 1983. The Circuit Court dismissed the employee's action and the Supreme Court affirmed. Reaffirming what it held in *Monell v. New York City, Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a state is not a "person" within the meaning of § 1983. The Supreme Court, however, also held that state officials acting in their *official* capacity are also not "persons" under § 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." *Id.* 491 U.S. at 71, 109 S.Ct. at 2311, 105 L.Ed.2d at 58.[11]

10. *See Transcontinental Gas Line Corp. v. Commonwealth,* 153 Pa.Commonwealth Ct. 60, 620 A.2d 614 (1993).

11. *Will* also held, however, that a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not

In *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the Supreme Court further developed *Will*'s holding and allowed a state official in his *personal* capacity to be sued in a § 1983 action. In *Hafer*, employees filed a § 1983 action against Hafer, Pennsylvania's Auditor General, seeking money damages against Hafer in her personal capacity. The district court dismissed the employees' action under *Will*, but the Third Circuit reversed on this issue. The Third Circuit held that while Hafer's power to hire and fire derived from her position, a suit for damages based on the exercise of this authority could be brought against Hafer in her personal capacity. The Supreme Court affirmed.

In an attempt to eliminate the confusion about the distinction between personal-capacity and official-capacity suits, the Supreme Court in *Hafer* described official-capacity suits as another way of pleading an action against the governmental unit of which the officer is an agent of that unit. Thus, the official-capacity suit is treated as a suit against the state. In these situations when an official sued in this capacity dies or leaves office, the successor automatically assumes the role in the litigation. Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* at — – —, 112 S.Ct. at 361–62, 116 L.Ed.2d at 309, citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985) (citation omitted). Therefore, in an official-capacity suit the only immunities available to the agent are those immunities available to the governmental unit. *Id.*

Personal-capacity suits differ in that they seek to impose individual liability upon the official for actions taken under "color of state law." *Id.* Thus, in personal-capacity suits one must show that the official was acting under "color of state law" when the deprivation of a federal right occurred. The plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," but then officials,

treated as an action against the state. *Will*, 491 U.S. at 71, n. 10, 109 S.Ct. at 2311, n. 10, 105 L.Ed.2d at 58 n. 10 (citation omitted).

sued in this personal capacity, may assert the personal immunity defenses such as reasonable reliance on the existing statute and regulation. *Id.* However, the plaintiff may not merely plead against the official as an individual, the plaintiff must also seek damages against the individual.

In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the estates of three students who died at Kent State University in May 1970 sought damages from the governor of Ohio and other state officials in the federal district court. The district court dismissed the complaints on the theory that although brought against state officials in their personal capacities they were in substance actions against the state and, therefore, barred by the Eleventh Amendment.[12] The Supreme Court, citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), rejected this view, stating that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law. *Scheuer* also held that the doctrine of *Ex parte Young* does not apply where a plaintiff seeks damages from the public treasury. That is, where the action is one against the public treasure, it is in reality against the state and the Eleventh Amendment would bar the action in federal court.

In the case before us, Taxpayers made individual claims against two secretaries of the Department and a deputy secretary. The initial action was brought only against Secretary Fields, but his successor, Secretary Scheiner, was later added. Further, Taxpayers present no evidence that they sought damages from the officials as individuals. Taxpayers sought only damages from the coffers of the Commonwealth. In fact, Smolow's counsel stated that he was requesting "to be paid by the *Commonwealth* out of this so-called $31,000,000 common fund." (376a) (Emphasis added).

12. The Eleventh Amendment provides:
> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

As was stated in *Will,* a personal-capacity suit is more than a "mere pleading device." Therefore, because Taxpayers' action followed successive secretaries of the Department and because nowhere in the pleadings or record did Taxpayers seek damages personally from Defendants Fields, Scheiner or Ross, we hold that the alleged personal-capacity actions were mere pleading devices and not true personal-capacity causes of action. Our holding is compelled by the holdings in the decisions of the United States Supreme Court. Because no § 1983 action can be brought against the state or a state official in his official capacity, *Will,* and that no true cause of action was brought against the state official defendants in this case in their personal capacity, Taxpayers had no § 1983 cause of action, *ab initio.*

 Because we must examine whether a cause of action exists before granting a class action, *Lillian v. Commonwealth,* 467 Pa. 15, 354 A.2d 250 (1976), *Stevenson v. Department of Revenue,* 489 Pa. 1, 413 A.2d 667 (1980) and *Smolow I,* and because we hold that there was no valid § 1983 cause of action here, the trial court erred in certifying the class.[13]

Accordingly, we reverse.[14]

13. We are concerned that the initial certification of the class by the trial court may have misled some individuals who were improperly taxed to forego filing a petition for refund of taxes within the three-year statute of limitation set forth in 72 P.S. § 7253(a). Although we now reverse the trial court's grant of class certification, we believe that the trial court's order granting certification does equitably toll the running of the statute of limitations. The Commonwealth thus should process the forms submitted by Taxpayers under the Notice of Class Certification as if they were timely petitions for refund of taxes improperly paid. *See generally American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

14. Because of our disposition in this case, we need not address the Commonwealth's challenge to the trial court's certification of the class based upon the allegation that the Commonwealth conceded liability in stipulating to the Notice of Class Certification. We also need not address the challenge to the trial court's granting of attorneys' fees and costs to Smolow's counsel because counsel was not successful in either securing a class which allows fees pursuant to Pa.R.C.P. No. 1716 or in stating a cause of action under 42 U.S.C. § 1983 which allows attorneys' fees under 42 U.S.C. § 1988. *See Pechner, Dorfman, Wolffe,*

## ORDER

AND NOW, this 24th day of March, 1994, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby reversed.

PELLEGRINI, Judge, concurring.

I concur with the majority's reversal of the trial court's order awarding counsel fees, but do not join because I disagree with the reasoning used in arriving at its holding. The majority reverses the trial court's award of counsel fees for two reasons: Taxpayers have failed to exhaust their state administrative remedies and a Section 1983 action against the Commonwealth and its officials is barred by the Eleventh Amendment. I disagree that there is a requirement for exhaustion of administrative remedies, as well as Taxpayers' action is totally barred by the Eleventh Amendment. I would, however, reverse the award of counsel fees because I do not believe Taxpayers have prevailed on any significant issue.

On May 16, 1988, Taxpayers brought a class action civil rights action pursuant to 42 U.S.C. § 1983 challenging a Pennsylvania Department of Revenue (Department) policy regarding sales tax on auto rebates received by a consumer when purchasing a new motor vehicle. They sought both an injunction of the Department's tax rebate policy, as well as a refund of all sales tax calculated on the rebate amount. The action arose because sales tax was paid on the entire purchase price, apparently as a result of a 1987 letter ruling of a Department of Revenue Attorney, finding that the calculation of sales tax against an automobile's purchase price should not be reduced by the amount of any manufacturer's rebate.[1] Responding to a request for clarification of the Department's rebate policy from the Pennsylvania Automotive Association

*Rounick & Cabot v. Insurance Department,* 46 Pa.Commonwealth Ct. 641, 407 A.2d 100 (1979).

1. This letter finding was that a manufacturer's rebate was not available to a purchaser until the sale is actually consummated. Because it was not available until after the sale, the amount could not be used to reduce the purchase price.

(PAA), in a letter dated April 28, 1988, *three weeks before this lawsuit was filed,* a Deputy Secretary of the Department stated that the Department would allow the rebate amount to be subtracted from the purchase price.[2]

After its preliminary objections to the complaint were denied, the Commonwealth filed an answer and new matter contending, among other things, that the policy sought to be enjoined had already been changed. The Commonwealth filed for judgment on the pleadings that the trial court also denied. Taxpayers then filed for class certification of the action which was granted by the trial court. After certification, the parties agreed to class notice and the notification process by mailing the notices to almost 2 million individuals. Notice was accomplished by placing the notices in the PennDot renewal packet. Taxpayers then filed a petition for voluntary discontinuance and a petition for attorney's fees and costs contending that because the class had been certified and notice given, and the Commonwealth had agreed to pay all class members' claims if filed, they had obtained the full relief for the class and, consequently, were entitled to attorney's fees under 42 U.S.C. § 1988.[3] The trial court granted discontinuance of the class action, ordered the Commonwealth to pay all approximate class members' refunds if filed, and to pay Taxpayers $771,-176.14 in attorney's fees and costs. After the Commonwealth's post trial motions were denied, this appeal followed.

## I.

One of the bases on which the majority reverses the trial court is its holding that Taxpayers had to exhaust the administrative procedures provided for in the Tax Code before bring-

**2.** This clarification of policy was sent to the PAA and the Pennsylvania Department of Transportation (PennDot), the agency that collects sales tax on automobile purchases. Press releases were also issued concerning the clarification.

**3.** Section 1988 provides in pertinent part:
[I]n any action or proceeding to enforce a provision of [Section 1983 and other statutes] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

ing a Section 1983 action. Recognizing that the Supreme Court, in *Murtagh v. County of Berks*, 535 Pa. 50, 634 A.2d 179 (1993), did not require Taxpayers to exhaust their administrative remedies before filing a Section 1983 action, the majority finds that because *Murtagh* involved a claim of invidious discrimination, and here, no discrimination is alleged, that distinction takes this case out of *Murtagh's* ambit. As such, Taxpayers are still required to exhaust their administrative remedies before maintaining a Section 1983 action. I disagree with the majority's holding because *Murtagh* did not attempt to address the necessity of exhaustion of administrative remedies, but rather, the applicability of the Tax Injunction Act of 1937, 28 U.S.C. § 1341, to a Section 1983 action brought in state courts.

*Murtagh* involved a class of taxpayers challenging the real estate tax assessment procedures of the Berks County Board of Assessment through a Section 1983 action. At issue was the applicability of the Tax Injunction Act to Section 1983 actions brought in state courts. Because the jurisdiction of federal courts for federal statutory violations are set by Congress, Congress, in acts such as the Tax Injunction Act, can foreclose jurisdiction of district courts over certain causes of action. When enacting the Tax Injunction Act, Congress provided that:

> The district courts shall not *enjoin, suspend or restrain* the assessment, levy or collection of *any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.* (Emphasis added).

While the Tax Injunction Act only bars injunctive action, the Supreme Court in *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), found that the principle of comity bars actions for monetary damages as well.

The United States Supreme Court stated that when Congress enacted the Tax Injunction Act, it recognized that the autonomy and fiscal stability of states survive best when their tax systems are not subject to federal scrutiny. The Supreme

Court reasoned that allowing actions for monetary damages would be just as intrusive and disruptive to the state's revenue collection system as the actions for injunctive relief specifically barred under the Tax Injunction Act, and monetary damages should also not be available. The court then went on to state that "[s]uch taxpayers must seek protection of their federal rights by *state remedies*, provided, of course, that those remedies are *plain, adequate and complete*, and may ultimately seek review of the state decisions in this court." *Id.* at 116, 102 S.Ct. at 186, 70 L.Ed.2d at 283. (Emphasis added).

Reversing this court and not disagreeing that state remedies to challenge unlawful assessments were adequate and complete, our Supreme Court held that the statutory abstention of the Tax Injunction Act did not foreclose state courts from hearing Section 1983 actions. It held that while Congress did not want federal courts to intrude in state tax procedures by entertaining challenges based on federal causes of action, that rationale did not apply by the Act's very terms. The Tax Injunction Act only applied to federal district courts, and the principle of comity embodied in that Act and Supreme Court decisions expanding it did not apply when the state courts were doing the intruding. While Taxpayers in this action could not maintain this cause of action in federal court as a result of *Murtagh*, nothing forecloses them from maintaining their Section 1983 action in state courts. As can be seen from the foregoing issue, *Murtagh* has nothing to do with exhaustion of administrative remedies, but whether an action foreclosed in federal courts based on comity is also barred in state courts.

This leads to the crux of my disagreement with the majority: its holding that the plaintiffs need to exhaust administrative remedies prior to bringing this action. In *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), the Supreme Court held that state courts are mandated to hear Section 1983 actions explaining that "federal law is enforceable in state courts ... because the Constitution and laws passed pursuant to it are as much laws in the states as laws passed by the state legislature." *Id.*, 496 U.S. at 367, 110 S.Ct. at 2438,

110 L.Ed.2d at 347. It went on to say that because it is a federal right, "a state may not, by statute or common law, create a cause of action under Section 1983 ..." nor may a state lessen the availability of a Section 1983 action. *Id.*, 496 U.S. at 368, 376, 110 S.Ct. at 2439, 2442, 110 L.Ed.2d at 348, 353. By holding that Taxpayers must exhaust their administrative remedies, I believe that the majority is diminishing the availability of a federal cause of action directly contrary to *Howlett.*

From the resurrection of Section 1983 in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court has rejected the requirement that before filing a Section 1983 cause of action, even state *judicial* remedies must be exhausted. In *Monroe,* it stated "[t]hat this court has not interpreted Section 1983 to require a litigant to pursue state judicial remedies prior to commencing an action under this section." Extending that holding, in *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Supreme Court has also found that a plaintiff need not exhaust his or her *administrative* remedies in order to maintain a Section 1983 cause of action because Congress intended that aggrieved parties have ready access to the forum of their choice. *See also Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). Because the Supreme Court has expressly held that there is no need to exhaust state administrative remedies, I disagree with the majority that Taxpayers could not maintain their Section 1983 action because they failed to exhaust their administrative remedies.

## II.

The other basis on which the majority relies to reverse the trial court's decision is that a Section 1983 action against the Commonwealth and its officials acting in an official capacity is not maintainable because of the Supreme Court's decision in *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *Will* greatly limited the viability of maintaining Section 1983 actions against states and

its officials. Prior to *Will*, Section 1983 actions against states were dismissed under the Eleventh Amendment to the United States Constitution which generally prohibits suits against a state or its agencies. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Because it does not immunize states from suits in state courts, *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), and a state could waive its immunity, *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990), the Eleventh Amendment acts only as a partial bar to the bringing of a Section 1983 action against them. *Will* affords states a much greater protection than that afforded by the Eleventh Amendment from a Section 1983 suit by holding that states are not "persons" as used in the section. Because they are not "persons", they do not fall within the section's ambit and cannot be sued in state courts nor can the state waive immunity. However, *Will's* bar to maintaining a Section 1983 action against public officials when acting in their official capacity is not total.[4]

As the majority itself recognizes, while the state continues to be immune from suit, state officials still can be sued under Section 1983 in their official capacity for prospective injunctive relief. *See Will*, 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10, 105 L.Ed.2d at 58 n. 10. "[O]f course, a state official sued in his or her official capacity for injunctive relief would be a person under Section 1983 because 'official capacity actions for *prospective relief* are not treated as actions against the State'". *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Because a Section 1983 action cannot be maintained to obtain any judgment that would require reimbursement of funds from the state treasury, I agree with the majority and find that portion Taxpayers' action requiring the Common-

4. Of course, public officials can be sued when acting in their personal capacity if the actions complained of were outside those which the public official usually administered, e.g., firing persons for political reasons, they were "persons" within the Act and public officials could be sued in their individual capacity. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

wealth to pay all appropriate refunds cannot be maintained. However, because the Section 1983 action can be maintained seeking prospective injunctive relief, I believe that portion of the action against state officials was maintainable. Because it was maintainable, we are required to determine whether Taxpayers are prevailing parties within the meaning of Section 1988.

## III.

While the previous analysis of exhaustion of administrative remedies and the effect of *Will* on Taxpayers' claim was necessary, that analysis is only relevant in the way it aids in determining whether Taxpayers are entitled to counsel fees. Specifically, the issue before us is whether Taxpayers are prevailing parties within the meaning of Section 1983, when Taxpayers' voluntarily discontinued their action. In *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), the Supreme Court held that a plaintiff to be entitled to counsel fees must show that the litigation was the direct cause of the changes made by the public officials. *See also Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). An award of some sort of injunctive or monetary relief is required and the mere obtaining of favorable judicial comments does not bring a plaintiff within the definition of prevailing party. Nonetheless, the court in *Hewitt* did not foreclose all claims despite the absence of a formal judgment when the suit provides the plaintiff with some or all of the relief sought. The touchstone of whether the party has prevailed is whether as a result of the plaintiff's lawsuit, there is a material alteration of the legal relationship of the parties which Congress sought to promote in the fee statute caused by the litigation. *Texas State Teacher's Association v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

The trial court, in its finding of fact, held that Taxpayers' Section 1983 action materially altered the legal relationship between the parties for three basic reasons, it found the Commonwealth:

• in July, 1988, adopted Taxpayers' position and agreed not to tax manufacturers rebates received prior to the sale; (Findings of Fact 1a, 1b, 2a).

• agreed to pay cash refunds for those individuals who filed a claim for refunds from the state; (Findings of Fact 2c, 2e).

• the class was certified, and as a result of the required class notice, individuals received notice that they were entitled to refunds on sales tax paid on rebates. (Findings of Fact 1d, 2b, 2d, 2e).

None of those findings justify the award either because they are not supported by substantial evidence or do not represent a material change in the legal relationship between the parties.

As to the change in the Department's policy not to tax rebates, the policy that Taxpayers sought to change was changed, but it was changed on April 28, 1988, three weeks before Taxpayers filed their Section 1983 action. The uncontroverted testimony of the Department's Deputy Secretary was that the policy announced was the result of ongoing discussions with the PAA and not the result of Taxpayers' conduct. Moreover, just because the Commonwealth agreed when class notice was sent out that the Commonwealth would not tax rebates and that refunds were available, does nothing to change the legal relationship between the parties. It was a remedy that was already available to Taxpayers. A Section 1983 lawsuit that results in the plaintiff doing no more than it already had committed to do will never satisfy the requirement that the litigation caused the benefit. *See Disabled in Action of Pennsylvania v. Pierce,* 789 F.2d 1016, 1019 (3rd Cir.1986).

As to the trial court's finding that Taxpayers' Section 1983 action caused refunds to be issued, it is not factually supported in that the Department had previously agreed that its policy was not proper and had already begun to issue refunds. Even if the Department had not begun issuing refunds, *Will* precludes the maintaining of a Section 1983 action for compensa-

tory damages or awarding any type of retroactive relief, including the obtaining of tax refunds.

Finally, just because Taxpayers were successful in having the class certified and in sending class certification notices that there was an administrative process by which refunds would be made to those who paid taxes on rebates, that is not the type of success needed for a plaintiff to be awarded Section 1988 counsel fees. When the class notice was sent, the Commonwealth's policy had already changed and refunds were already being issued. In *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Supreme Court made it clear that the plaintiff needs to prevail on the merits of his or her claim to be entitled to counsel fees. It held that success on "procedural or evidentiary rulings which may effect the disposition on the merits, but were themselves not matters on which a party could 'prevail' " and be entitled to Section 1988 counsel fees. *Id.* at 759, 100 S.Ct. at 1990, 64 L.Ed.2d at 675. Under *Hanrahan,* counsel fees may not be awarded for class certification and notice because that is only a procedural victory, even though it may have the effect of informing the class that relief may be available. *See Society for Good Will to Retarded Children, Inc. v. Cuomo,* 737 F.2d 1253, 1254 (2nd Cir.N.Y.1984); *see also N.A.A.C.P. v. Wilmington Medical Center, Inc.,* 689 F.2d 1161, 1165–66 (3rd Cir.1982).

For the above reasons, I concur with the majority in reversing the trial court and denying Taxpayers' claim for counsel fees under Section 1988.