## Cheeseman v. H.A. Berkheimer Inc.

514

C.P. of Bucks County, no. 2002-06020-27-5.

*Bernard M. Gross,* for plaintiffs.
*Scott R. Lipson,* for defendants.

MELLON, *J.,* June 9, 2005—Plaintiffs, Robert W. Cheeseman and Kathleen M. Cheeseman, have petitioned this court to certify a class action pursuant to Pennsylvania Rules of Civil Procedure, Rule 1701 et seq. The class they seek to certify consists of the following:

"All Pennsylvania residents who paid improper costs to Berkheimer in connection with the local earned income tax for one or more of the tax years from 1995 through 2001."

For reasons that will become clear in the course of this opinion, this court has molded the putative class to:

"Any and all Pennsylvania taxpayers who were assessed and paid costs and/or fines imposed by Berkheimer for delinquent taxes prior to the commencement of litigation to collect the delinquent taxes in the Commonwealth of Pennsylvania for the tax years 1995 through 2001."

In seeking certification, plaintiffs allege that, in contravention of the Pennsylvania Local Tax Enabling Act (LTEA), 53 Pa.C.S. §6901 et seq., Berkheimer assessed and collected "improper costs." According to 53 Pa.C.S. §6913VIII(a), a political subdivision and its agent (Berkheimer) are not authorized to assess or collect the costs of collection of unpaid taxes unless and until a suit is brought for such collection. Relying on the foregoing statute, plaintiffs further allege that defendants, in violation of Pennsylvania law, routinely assess and collect improper costs not only from plaintiffs, but also from all similarly situated taxpayers. See plaintiffs' complaint. After hearing, and upon consideration of the parties' pleadings, briefs, and supporting memoranda, this court grants plaintiffs' motion for class certification.

## PROCEDURAL HISTORY

Plaintiffs filed a complaint and petition for class action certification on September 13, 2002, and, following preliminary objections by defendants, plaintiffs filed an amended complaint on November 1, 2002. Plaintiffs seek monetary damages as a result of defendants having allegedly assessed and collected unauthorized costs from plaintiffs after plaintiffs became delinquent in payment of their Local Earned Income Tax (EIT). Plaintiffs seek recompense for all damages incurred including attorneys'

fees, costs, and such other relief as the court deems appropriate. Plaintiffs further sue on behalf of all Pennsylvania residents who are similarly situated who have (1) paid EIT taxes to their municipality for one or more of the tax years 1995 through 2001; (2) did not pay the EIT on April 15 of the tax year that it was due; (3) were assessed a collection "cost" by defendants; and, (4) were not brought into litigation by Berkheimer for the collection of the EIT.

On November 19, 2002, defendants again filed preliminary objections which this court overruled by order dated January 28, 2003.

On February 20, 2003, defendants filed an answer, new matter, and counterclaim to the amended complaint.

Plaintiffs filed a motion for summary judgment on September 1, 2004, along with an amended petition for class certification. On November 4, 2004, after motion by defendants, this court stayed plaintiffs' motion for summary judgment.

On November 9, 2004, this court heard arguments from the parties regarding class certification. The matter was taken under advisement, and is hereby decided in this opinion and order.

## FACTS

The facts of this matter are not complex and are essentially not disputed. Plaintiffs, Robert W. and Kathleen M. Cheeseman, reside in Warrington Township, Pennsylvania, and as such are required by local ordinance to pay a Local Earned Income Tax in the amount of 1 percent of their net earned income. Defendant, H. A. Berkheimer Inc., is contracted by various municipalities

and school districts across the Commonwealth to collect and administer the EIT. Defendant collects and administers various taxes for more than 1,100 municipalities and school districts in Pennsylvania. Defendants entered into an agreement to act as agent for Warrington Township for the purpose of collecting the EIT. (See contract, exhibit "B" to amended complaint.) Such arrangements are specifically provided for by 53 Pa.C.S. §6910(b), the Local Tax Enabling Act.

Plaintiffs filed a local tax return with defendants by April 15, 2000, for the tax year 1999, but failed to enclose payment. Subsequently, defendants mailed to plaintiffs a form entitled "Failure to File Local Earned Income Tax Return" that indicated that, in addition to the taxes, an amount of 4 percent of the outstanding taxes was due for "penalties and interest." In addition to the 4 percent for penalties and interest, the form indicated an additional amount of $18 was due as "costs."

Plaintiffs paid the costs of $18, and attempted to negotiate an installment payment plan to pay the taxes, interest and penalties. Subsequently, defendants mailed a notice entitled "Final Notice Before Wage Attachment" to plaintiffs. This notice assessed an additional "cost" of $39.

Defendants never initiated any further action to collect the delinquent taxes from plaintiff, nor did they file suit.

Plaintiffs aver that Berkheimer is not authorized by law to assess or collect the "costs" that were indicated on the form and the notice. They maintain that the LTEA only grants the authority for the municipality and/or its agent to collect taxes, interest and penalties.

## DISCUSSION

As noted above, plaintiffs have alleged that the costs assessed and collected by defendants are not authorized by statute, and are therefore improper. Defendants deny this allegation, and counter by contending that plaintiffs' proper and exclusive remedy lies in a "refund statute," found at 72 P.S. §5566(b). Because this statute is an individual remedy, defendants further aver that a class or representative action cannot be waged.

The [class certification] hearing is confined to a consideration of the class action allegations and is not concerned with the merits of the controversy or with attacks on the other averments of the complaint. Pa.R.C.P. 1707, Explanatory comment—1977.

Despite that guidance, in an apparent effort to prevent unnecessary expenditure of judicial resources on cases that had no chance of success, the Commonwealth Court, in *Stranahan v. County of Mercer,* 697 A.2d 1049 (Pa. Commw. 1997), held that "the underlying substantive cause of action must first be examined when considering whether there is authority to employ the procedural device of a class action certification hearing." *Stranahan v. County of Mercer,* 697 A.2d 1049, 1051 (Pa. Commw. 1997) quoting *Smolow v. Commonwealth,* 131 Pa. Commw. 276, 570 A.2d 112 (1990).

Therefore, where an administrative remedy preempts litigation, class certification cannot lie. It is the responsibility of the trial court to determine whether such a bar to litigation exists in a given case.

To meet this burden laid on us by our Commonwealth Court, and to determine whether plaintiffs' complaint

surpasses this threshold of litigability, the court examined the interplay between the LTEA at 53 Pa.C.S. §6910(b) and the Refund Statute at 72 P.S. §5566(b). A discussion of that issue follows herein.

The relevant portion of the LTEA (Local Tax Enabling Act), 53 Pa.C.S. §6913VIII(a), reads as follows:

"(a) If for any reason the tax is not paid when due, interest at the rate of 6 percent per annum on the amount of said tax, and an additional penalty of one-half of 1 percent of the amount of the unpaid tax for each month or fraction thereof during which the tax remains unpaid shall be added and collected. *Where suit is brought* for the recovery of any such tax, the person liable therefore shall, in addition, be liable for the costs of collection and the interest and penalties herein imposed." 53 Pa.C.S. §6913VIII(a). (emphasis added)

The LTEA unconditionally permits political subdivisions to collect tax, interest, and an additional penalty of 1/2 percent of the unpaid tax. However, a plain reading of the statute reveals that: *The LTEA does not permit collection of any costs unless and until suit is brought* for the recovery of any such tax.

Plaintiffs allege that Berkheimer routinely charges costs before any commencement of lawsuit.

Defendants do not address the propriety of their collecting costs.[1] Rather, in opposing the class certification, defendants cite *Smolow, supra,* where the court held that a class action could not be utilized to obtain individual tax refunds where a statutory refund procedure was avail-

---

1. Discussion of the propriety of the collection of costs would go to the merits of the case, and is not appropriate at the class certification juncture.

able to the individual taxpayer. *Smolow,* 131 Pa. Commw. 276, 570 A.2d 112.

A statutory mechanism to remedy overpayment or erroneous payment of taxes (the refund statute) is found at 72 Pa.C.S. §5566(a):

"Whenever any person . . . has paid or caused to be paid . . . into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, license fees, penalties, fines or any other monies to which the political subdivision is not legally entitled; then, in such cases . . . upon filing with them of a written and verified claim for the refund of the payment . . . [the political subdivision] are hereby directed to make . . . refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled." 72 Pa.C.S. §5566(a)

Defendants contend that the phrase "any other moneys" in the subject statute includes the costs that are the subject of this lawsuit.

In their memoranda, defendants aver that they frequently refund the subject costs when a taxpayer complains. However, such an averment could be viewed as a tacit admission that Berkheimer knows that its assessment and collection of such costs is beyond its authorization.

To decide whether the refund statute applies, and hence whether it should preclude plaintiffs from bringing suit, the court reverts to a plain language analysis. The refund statute requires that, for the complaining taxpayer to accrue the right to request a refund, the money sought to be refunded must have been paid into "the treasury of the political subdivision" either "directly or indirectly."

The operative question becomes whether the costs that Berkheimer collects are "paid," "directly or indirectly," "into the treasury," of any "political subdivision."

Berkheimer contracted for and is being paid a commission to collect the taxes, interest, and penalties for Warrington Township and other political subdivisions. In addition to the commissions, Berkheimer also assesses and collects the costs that are the subject of the instant lawsuit. These costs are being collected by and paid directly to Berkheimer. The money goes directly to Berkheimer and is not being passed on to the treasury a political subdivision. If such costs are not authorized by the LTEA, the political subdivision could not legally have contracted for Berkheimer to collect these costs.

Berkheimer argues that the costs it collects help keep down the collection costs incurred by the townships, and are therefore "indirectly" going to the treasury of the political subdivision. Such contention is inapposite. The *commissions* that the municipality contracted for with Berkheimer are incorporated into the amount of tax when the municipality figures the tax rate, and thereby do, indirectly, go into the treasury. However, the costs that comprise the subject of this lawsuit are assessed by Berkheimer and are kept by Berkheimer. They do not reduce the cost to the political subdivision, but merely increase Berkheimer's profit.

Defendants cite a passel of cases for their contention that the refund statute is plaintiffs' sole remedy, and that a class action certification is inappropriate. See *Stranahan v. County of Mercer,* 697 A.2d 1049 (Pa. Commw. 1997) (challenging the constitutionality of a tax); *Smolow v. Commonwealth of Pennsylvania,* 131 Pa. Commw. 276,

570 A.2d 112 (1990) (seeking refund of tax overpayment); *Lilian v. Commonwealth,* 467 Pa. 15, 354 A.2d 250 (1976) (seeking refund of a repealed tax); *Zarwin v. Montgomery County,* 842 A.2d 1018 (Pa. Commw. 2004) (seeking refund of tax on non-exempt stock); *Israelit v. Montgomery County,* 703 A.2d 722 (Pa. Commw. 1997) (challenging the constitutionality of a tax); and *Aronson v. City of Pittsburgh,* 98 Pa. Commw. 1, 510 A.2d 871 (1986) (challenging the constitutionality of the business privilege tax).

In each of the cases cited, the refund statute was deemed the exclusive remedy, and a class action was not permitted. However, each of these cases dealt with application for a refund of taxes, penalties and interest. None involved litigation challenging costs or application for refund of costs. Further, most of the cases involved erroneously paid taxes, or application for refunds of taxes that were not owed. Furthermore, all of the cases were brought against the municipality as defendant and not against a party such as Berkheimer that is merely contracted as an agent of the political subdivision to assess and collect taxes.

The refund statute provides no guidance as to what is meant by "directly or indirectly"; therefore it would be inaccurate to conclude that the costs that are the subject of the instant case go to the treasury indirectly. If it were adjudged that the statutory language was ambiguous, the trial court would be forced to look to legislative intent. It is unlikely that the legislature could have intended to sanction collection of costs that violate the LTEA. Each analysis considered by the court yielded the same result—that the refund statute is not intended to apply to plaintiffs' case.

An obvious example of monies "indirectly" paid into the treasury would be where a taxpayer pays Berkheimer and Berkheimer forwards the moneys to the political subdivision. Only a tortured interpretation could result in finding that the subject costs indirectly find their way to municipal treasuries.

Consequently, in the instant case, we find that the costs assessed by Berkheimer are not being paid into the treasury, either directly or indirectly, and therefore conclude that the refund statute is unavailable to plaintiffs and other similarly situated taxpayers. *Only if it was conclusively determined that the refund statute applies would the prospect of a class action lawsuit be proscribed.*

## *Criteria for Class Action Certification*

The prerequisites of a class action are set forth in Pennsylvania Rules of Civil Procedure 1702, 1708, and 1709. Pa.R.C.P. 1702 provides that a class may be certified if the following requirements are satisfied:

"(1) the class is so numerous that joinder of all members is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708."

In determining whether the above criteria have been satisfied, trial courts are vested with broad discretion. *Baldassari v. Suburban Cable TV Company Inc.,* 808 A.2d 184 (Pa. Super. 2002), citing *Weinberg v. Sun Co. Inc,* 740 A.2d 1152, 1162 (Pa. Super. 1999). Further, decisions in favor of maintaining a class action should be liberally made. *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 500 A.2d 1137 (1985); see also, *Bell v. Beneficial Consumer Discount Co.,* 241 Pa. Super. 192, 360 A.2d 681 (1976) (class action rules enable assertion of claims that would otherwise not be litigated).

At a class certification hearing, the burden of proof lies with the movant, but, this being a preliminary hearing, it is not a heavy burden. *Baldassari,* 808 A.2d at 189; *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 451 A.2d 451 (1982). The movant need only present evidence sufficient to make out a prima facie case "from which the court can conclude that the five class certification requirements are met." *Id.* It is clear in Pennsylvania that plaintiffs' burden to establish the prerequisites for class certification is not a heavy one. *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 501 A.2d 635 (1985). It is the strong and oft-repeated policy of this Commonwealth that, in applying the rules for class certification, decisions should be made liberally and in favor of maintaining a class action. *Baldassari,* 808 A.2d at 189. As noted above, despite having broad discretion and liberal license, Rule 1707 does limit the court's inquiries at the certification hearing:

"The hearing is confined to a consideration of the class action allegations and is not concerned with the merits of the controversy or with attacks on the other averments of the complaint. *Its only purpose is to decide whether*

*the action shall continue as a class action or as an action with individual parties only.* In a sense, it is designed to decide who shall be the parties to the action and nothing more. Viewed in this manner, it is clear that the merits of the action and the right of the plaintiff to recover are to be excluded from consideration." Pa.R.C.P. 1707, Explanatory note (emphasis added); see *Cavanaugh v. Allegheny Ludlum Steel Corp.,* 364 Pa. Super. 437, 528 A.2d 236 (1987) (holding that the trial court improperly examined the merits of the litigation itself instead of focusing on the factors relevant to class certification, and vacated the order denying class certification). In light of the foregoing, we will examine the enumerated factors for class certification.

## 1. Numerosity

Plaintiffs purport to represent a class of Pennsylvania taxpayers who were assessed and paid costs fines imposed by Berkheimer for delinquent taxes prior to the commencement of litigation to collect the delinquent taxes in the Commonwealth of Pennsylvania for the tax years 1995 through 2001. To be eligible for certification, plaintiffs must demonstrate that the class is "so numerous that joinder of all members is impracticable." Pa.R.C.P. 1702(1). A class is sufficiently numerous when the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should such potential plaintiffs sue individually. *Temple University of the Commonwealth System of Higher Education v. Pennsylvania Department of Public Welfare,* 30 Pa. Commw. 595, 603, 374 A.2d 991, 996 (1977) (held 123 members sufficient); *ABC Sewer Clean-*

*ing Co. v. Bell of Pa.,* 293 Pa. Super. 219, 438 A.2d 616 (1981) (held 250 members sufficient); *Ablin Inc. v. Bell Telephone Company of Pennsylvania,* 291 Pa. Super. 40, 435 A.2d 208 (1981) (held 204 plaintiffs sufficiently numerous). Plaintiffs are not required to plead or prove the actual number of class members, so long as they are able to "define the class with some precision" and provide "sufficient indicia [to the court] that more members exist than it would be practicable to join." *Janicik,* 305 Pa. Super. at 132, 451 A.2d at 456.

Defendants concede that plaintiffs have met the numerosity requirement. Moreover, the record reveals that Berkheimer represents over 1,000 municipalities and school districts with hundreds or thousands of taxpayers in each. The number of taxpayers who were assessed and paid the "improper costs" is obviously very large. Therefore, this court is satisfied that plaintiffs have established a proposed class with a "magnitude sufficiently numerous that joinder of all its members would be impracticable." *Baldassari,* 808 A.2d at 190.

### 2. Commonality

For class certification, plaintiffs must establish that their claims present "questions of law or fact common to the class." Pa.R.C.P. 1702(2). "The common question of fact means precisely that the facts must be substantially the same so that proof as to one claimant would be proof as to all." *Allegheny County Housing Authority v. Berry,* 338 Pa. Super. 338, 342, 487 A.2d 995, 997 (1985); *Cook v. Highland Water and Sewer Authority,* 108 Pa. Commw. 222, 231-32, 530 A.2d 499, 504 (1987). While the existence of individual questions essential to a class member's recovery is not necessarily fatal to the class, there must

be a predominance of common issues shared by all class members which can be justly resolved in a single proceeding. *Janicik,* 305 Pa. Super. at 133, 451 A.2d at 457.

Berkheimer collects a number of different costs, and they are assessed at a number of different stages in the process of attempting to get a delinquent taxpayer to ante up the taxes, penalties, and interest that are owed.

Defendants argue that plaintiffs cannot meet the commonality requirement for class certification because different proof would be required for each putative class member as to exactly which category of cost and amount of cost each was assessed. Also, defendants aver that the claims are not common because the different categories of costs are assessed at different times during the pendency of the collection process. The court sees this as a distinction without a difference. Either the costs are authorized or they are not, and either the putative class members paid an improper cost or they did not.

The common question, in its simplest form, is whether the costs are improper.

"Common questions will generally exist if the class members' legal grievances arise out of the 'same practice or course of conduct' on the part of the class opponent." *Janicik,* 305 Pa. Super. at 133, 451 A.2d at 457. "[C]lass actions may be maintained even when the claims of members of the class are based on different contracts" so long as "the relevant contractual provisions raise common questions of law and fact and do not differ materially." *Id.* If later refinement of the issues reveals that seemingly similar categories of costs merit differing interpretations, the court may create appropriate subclasses. Pa.R.C.P. 1710(c)(2). Plaintiffs and all putative class

members' "legal grievances" arise out of defendants' "common practice" of assessing and collecting costs that plaintiffs allege are not authorized by the LTEA, and are thereby contrary to law.

Defendants urge this court to examine each of the different categories and types of costs that they impose. To do this, this court would have to further delve into the merits of the underlying action, an activity that is clearly not this court's function at this stage of the litigation. *Baldassari, supra.*

The common issue affecting all class members in the instant matter is straightforward. Plaintiffs intend to show that defendants are not authorized to assess and collect costs. The primary question of fact that must be determined is whether plaintiffs and all putative class members were improperly charged.

The ultimate legal question to be determined as a matter of law is whether the statute authorizes defendants, as agents for the political subdivisions, to collect the costs, as is their practice. This legal issue can be answered on a class-wide basis without having to question each individual class member. Under these circumstances, we are satisfied that plaintiffs have met their burden of proving that there are questions of law and fact common to the class.

### 3. Typicality

For class certification, plaintiffs must establish that their claims are typical of the claims of the proposed class. Pa.R.C.P. 1702(3). This factor requires that the "class representative's overall position on the common issues is sufficiently aligned with that of the absent class mem-

bers to ensure that his pursuit of his own interests will advance those of the proposed class members." *Baldassari,* 808 A.2d at 193; *Janicik,* 305 Pa. Super. at 134, 451 A.2d at 457. Defendants argue that plaintiffs cannot establish the typicality element of class certification because plaintiffs were only assessed costs at one stage of the tax collection process. Again, the court views this as a distinction without a difference.

We are satisfied that plaintiffs have established commonality for the reasons stated above. Furthermore, plaintiffs' claims are typical of the proposed class because their claims focus on the common allegation that defendants charged taxpayers costs that they were not authorized to collect. Any factual differences between plaintiffs' claims and the claims of the class arise from that singular course of conduct, and all claims are based upon those same legal theories, *Baldassari,* 808 A.2d at 193. It is well established that questions as to the amount of individual damages will not preclude a class action. *Baldassari,* 808 A.2d at 194. Individual damage determinations can be made at a separate phase of the trial but, as discussed earlier, the central factual and legal issues are capable of class-wide resolution. Therefore, plaintiffs have satisfied the typicality requirement.

#### 4. Plaintiffs Will Fairly and Adequately Assert and Protect the Interests of the Class

Pa.R.C.P. 1702(4) requires the representative plaintiffs to fairly and adequately assert and protect the interests of the class. To make this determination, the court must consider: (1) whether the attorney for the representative party will adequately protect the class inter-

ests; (2) whether the representative parties have a conflict of interest in maintaining the action; (3) whether the representative parties "have or can acquire" adequate financial resources; and (4) "other matters." Pa.R.C.P. 1709.

" 'A litigant must be a member of the class which he or she seeks to represent at the time the class is certified by the . . . court' in order to ensure due process to the absent class members and to satisfy requirements of standing." *Janicik,* 305 Pa. Super. at 135, 451 A.2d at 458. Plaintiffs were assessed costs by Berkheimer in two separate instances, and paid those costs, all the while maintaining that they were improper. Plaintiffs are thus clearly a member of the class they seek to represent. Plaintiffs are thus potentially adequate class representatives pursuant to Pa.R.C.P. 1702(4).

### (a) *Attorneys for plaintiffs will adequately protect the class' interests*

"Generally, '[u]ntil the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession.' " *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 458. Courts may also infer the attorney's adequacy from the pleadings, briefs, and other material presented to the court, or may determine these warrant further inquiry. *Id.* Counsel's adequacy has not been disputed. After hearing and examination of plaintiffs' pleadings and memoranda, this court finds that counsel is competent and skilled to represent plaintiffs in the instant action. Accordingly, plaintiffs' counsel should be considered adequate to protect the absent class members' interests. *Id.* Pa.R.C.P. 1709(1).

## (b) *Plaintiffs have no conflict of interest in maintaining the action*

Because of the difficulty of proving otherwise, "courts have generally presumed that no conflict of interest exists unless otherwise demonstrated, and have relied upon the adversary system and the court's supervisory powers to expose and mitigate any conflict." *Id.* at 136-37, 451 A.2d at 458.

Defendants allege that a significant conflict of interests exists arising from the fact that the bringing of the class action suit will spawn counterclaims against the putative class members for the unpaid taxes. Yet, defendants are in control of any such counterclaims, and have the right to pursue them at this time, in the absence of this class action litigation. Nevertheless, defendants maintain that the class action representation would present an inherent impermissible conflict of interest because of the potential for counterclaims. This issue is neither compelling for defendant nor fatal to plaintiff.

Both defendants and plaintiffs cite federal cases as authority for their relative positions on this issue.

Defendants rely on *George v. Beneficial Finance,* 81 F.R.D. 4 (M.D. Tex. 1977) for the proposition that class litigation would be inappropriate because of an inescapable conflict of interest that is engendered by the prospect of counterclaims against class members. In *George,* as in the instant case, the counterclaims could exceed in amount the possible recovery by class members if the class litigation is successful.

Reliance on the holding of *George* is inapposite. It is true in the instant case that the counterclaims would set

off the awards, but that would not affect the defendants' liability for charging improper costs. Conversely, if the class action was successful, the class representatives who now legitimately owe taxes, interest and penalties, would no longer be responsible for the costs that were adjudged to be improper. See *Taylor v. Halstead,* 2000 U.S. Dist. Lexis 384 (N.D. Ill., Jan. 13, 2000) (Counterclaim would reduce damage awards but not affect a finding of liability against defendant). The result of the class litigation would be that the taxpayers would owe less.

It offends common sense to disallow class certification merely because of speculative conflicts regarding possible counterclaims. Such threats should not hinder class certification. *Hammid v. Unifund,* 2001 U.S. Dist Lexis 20012 (N.D. Ill., Dec. 3, 2001).

Although it is correct that Berkheimer could lodge counterclaims against each and every delinquent taxpayer, that is so in any event whether or not class litigation is waged. It seems that the defendants are threatening to bring counterclaims as retribution. If the threat of counterclaims is real, why have they not brought suit already to collect the delinquent taxes?

Pennsylvania law does not provide for compulsory counterclaims. Where compulsory counterclaims are the law, defendants are forced to bring a counterclaim, if one is possible, or else they lose the right to ever bring such a claim. If that were the case here, initiation of the class litigation would force Berkheimer to countersue every class member. In that event, the class litigation would be ill-advised because it would force lawsuits on every class member.

In the absence of a statutory requirement for compulsory countersuits, any purported conflict of interest arising from the threat of counterclaims by Berkheimer could be solved by informing putative class members of the potential for counterclaims and presenting them with the opportunity to opt out of the class. (See *e.g., Channell v. Citicorp,* 89 F.3d 379 (9th Cir. 1996).)

Nothing in the record suggests any fatal conflict of interest in plaintiffs maintaining this action. Pa.R.C.P. 1709(2).

### (c) *Plaintiffs have or can acquire adequate financial resources*

"[T]o assure that the interests of the class will not be harmed," the court must consider whether the representative parties "have or can acquire adequate financial resources" to prepare the litigation and carry it to completion. Pa.R.C.P. 1709(3); Explanatory note to Pa. R.C.P. 1709.

"The dangers of the potential conflict of interest arising from counsel's financing a class suit, however, must be viewed realistically in light of the circumstances and the procedural safeguards inherent in class suits." *Janicik,* 305 Pa. Super. at 138, 451 A.2d at 459. "Overly strict financing requirements would limit the class action to wealthy litigants, contrary to its purposes." *Id.* A lack of funding by plaintiffs, without more, is not sufficient to warrant denial of class certification. *Id.* Plaintiffs' counsel stated to the court that it is in a position to advance the costs of litigation and is prepared to do so. There is no evidence that counsel does not have the ability to advance such costs.

### 5. A Fair and Efficient Method of Adjudicating Plaintiffs' Claims

Finally, in order for plaintiffs to proceed with adjudication of this case as a class action, plaintiffs must establish that it is both fair and efficient to do so. The factors to be evaluated are set forth in Pa.R.C.P. 1708 as follows:

"In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth [below]

"(a) Where monetary recovery alone is sought, the court shall consider

"(1) whether common questions of law or fact predominate over any question affecting only individual members;

"(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

"(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

"(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

"(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

"(6) whether, in view of the complexities of the issues or the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions;

"(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action." Pa.R.C.P. 1708.

This court believes that common issues relating to whether defendants' assessment of costs is unauthorized by law predominate over the individual issues of exactly how and for how much money individual class members were improperly charged. As discussed earlier, we reject defendants' contention that reasonableness must be determined through individual questioning. We recognize that individual issues could remain if it is ultimately decided that some of the costs charged by defendants are proper. However, questions as to the amount of individual damages will not preclude a class action. *Baldassari,* 808 A.2d at 194.

With respect to manageability, the claims of the proposed class would be manageable because members of the class can be identified through defendants' computerized records. Additionally, courts will "rely on the ingenuity and aid of counsel and upon [this court's] plenary authority to control the action to solve whatever

management problems the litigation may bring." *Janicik,* 305 Pa. Super. at 142, 451 A.2d at 462.

Regarding the risk of inconsistent verdicts, the record does not indicate that other litigation has been commenced against defendants involving the same issues raised by plaintiffs in this action. However, the Superior Court has previously stated that "the risk of inconsistent verdicts is not essential to certifying the class but, 'if they exist, they will be forceful arguments in support of approval of the class action.' " *Baldassari,* 808 A.2d at 195; *Janicik,* 305 Pa. Super. at 143, 451 A.2d at 462-63.

Regarding the appropriate forum, it must be determined whether there is "no one common pleas court which would be better to hear the action." *Baldassari,* 808 A.2d at 195. As a result, we find that the Court of Common Pleas of Bucks County is an appropriate forum for adjudication of plaintiffs' underlying claims. Our finding is based upon defendants' business activities in many municipalities and school districts in Bucks County, undisputed in the record, and the fact that all of the proposed class members reside in Pennsylvania. Furthermore, concentrating the action in this one forum promotes judicial economy. *Id.*

Due to the issues of this case and expected expenses, it is unlikely that individual class members could support separate actions. The claims of individual class members are not sufficiently large enough to warrant individual actions. Plaintiffs' claims range from approximately 18 to 39 dollars.[2] To prevail on individual claims,

---

2. The individual costs charged by Berkheimer range from $18 to $39. Multiple imposition of the costs may make the individual claims larger.

class members would be forced to retain separate counsel and pay court costs, thus duplicating expenses. *Janicik,* 305 Pa. Super. at 144, 451 A.2d at 463. Moreover, small, but meritorious, claims may go unlitigated. *Id.* Further, there is a possibility that defendants would simply settle plaintiffs' individual claims, preventing an adverse decision on the merits, and thereby precluding effective relief to many. *Id.*[3] "Forcing multiple individual claims might not only be potentially unfair, but it could prove inefficient, for if the numerous proposed class members did bring individual suits, it could unnecessarily clog court dockets with repetitive litigation." *Id.* Accordingly, a review of all the circumstances under this criterion indicates that a class action is a fair and efficient method of adjudicating this controversy.

Finally, defendants argue that the amount that may be recovered by individual class members will be so small as not to justify a class action. We disagree. "Although the amounts of individual claims may be small in and of themselves, the aggregate amount of claims and potential individual recovery for class members is sufficient in amount to justify discovery expenses and requisite notice." *Baldassari,* 808 A.2d at 195. The Superior Court has previously noted "in determining whether the requirement of Rule 1708(a)(7) is satisfied, one does not view the potential recovery by itself. Rather, the rule requires a consideration of whether the potential expenses and efforts of administering the action would render the amount of recovery so small that a class action would not be justified." *Id.* "In many consumer class actions

---

3. In effect, this is Berkheimer's admitted practice: it often refunds the costs voluntarily.

the individual amounts may be very small, but the aggregate may be large, and maintenance of the class action might have a deterrent effect on future violations by the defendant." Pa.R.C.P. 1708, Explanatory note. Assuming that class membership could reach 70,000 taxpayers in this case, and recovery by individual class members could be as low as $18, the aggregate potential claim could be well over $2 million.[4] Thus, class certification is the only efficient method of resolution under the instant facts.

It would be unconscionable to permit Berkheimer to continue to collect costs to which it was not entitled from thousands of taxpayers. The proposed class action will resolve the issue and, if the costs are determined to be improper, will save countless delinquent taxpayers from paying costs to which Berkheimer is not entitled.

Therefore, this court finds that allowing this case to proceed as a class action provides a fair and efficient method of adjudication of the controversy under the criteria set forth in Pa.R.C.P. 1708.

## CONCLUSION

For the foregoing reasons stated herein, this court hereby grants plaintiffs' motion for class certification.

---

4. In their answer to plaintiffs' third set of interrogatories, Berkheimer indicated that as many as 70,000 taxpayers have been assessed such costs. The costs run from $18 through $39 in discrete steps. If one selects $30 as a rough average, the total of all claims could amount to $2.1 million dollars.

## ORDER

And now, June 9, 2005, in accordance with the above opinion, after consideration of the parties' pleadings, memoranda, and after hearing, it is hereby ordered that plaintiffs' motion for class certification is granted.

The court hereby certifies the following class:

(1) Any and all Pennsylvania taxpayers who were assessed and paid costs and/or fines imposed by Berkheimer for delinquent taxes prior to the commencement of litigation to collect the delinquent taxes in the Commonwealth of Pennsylvania for the tax years 1995 through 2001.

(2) The court hereby appoints Robert W. Cheeseman and Kathleen M. Cheeseman as representatives;

(3) Bernard Gross, Esquire is hereby designated as class counsel;

(4) Class counsel shall submit to the court a plan and description of notice of pendency of this class action within 30 days from the date of this order.